William L. Underwood, Jr., J.
This is an action for specific performance, arising out of an option of first refusal to purchase certain real estate owned by the defendants.
The plaintiff, George Sargent, as purchaser, entered into a contract of sale in 1951, with one Nathan Hervey Halsey, for certain lands situated on the corner of Sagaponack Road and Highland Terrace, Bridgehampton, New York. The contract contained a provision, in connection with the sale of the property hereinabove mentioned, which read as follows: “And it is further agreed that if the party of the first part [Halsey] any time during the lifetime of the party of the second part [Plaintiff Sargent] or his immediate assignee, distributees or devisees and while he or they as the case may be are still the owners of the above described property receives a bona-fide offer of purchase of his remaining land, adjoining the premises to be conveyed on the East and wishes to accept such offer, such offer must be communicated to the party of the second part or his immediate assignee, distributees or devisees as the case may be and the party of the second part or his immediate assignee, distributees or devisees, as the case may be, is or are hereby given the option to purchase such remaining land at the same price as it contained in any bona-fide offer which the party of the first part is willing to accept from any third party. The party of the second part, his immediate assignee, distributees, or devisees, as the case may be, shall have fifteen (15) days from receipt of notice in which to exercise such option. This agreement shall remain in effect after delivery of the deed and shall be binding on the party of the first part and his distributees and devisees.”
Title to the contracted premises was taken in the name of Sargent’s wife, Betty Sargent.
At the time of the execution of the option agreement, Halsey owned a single, undivided parcel of land, adjoining the parcel purchased by Sargent on the east, containing 7.894 acres.
*626 Thereafter, in 1962, and prior to Halsey’s death in 1965, he gave out three deeds to the 7.894 acres in which Sargent had the option of first refusal. Under the deeds executed by Halsey, each of his three sons became an owner of a portion of the land embraced within the land covered by the option agreement. For the purposes of this memorandum, the apportioned lands will be referred to as “ Parcels A, B and C. ’ ’
Parcel A, consisting of 2.292 acres, immediately adjoined, or abutted Sargent’s property, and was conveyed by Halsey to his son Claire Halsey and his wife Gladys.
Parcel B, consisting of 2.647 acres, was conveyed by Halsey to his son Raymond C. Halsey and his wife Dorothy.
Parcel 0, consisting of 2.647 acres, was conveyed by Halsey to his son Kenneth H. Halsey.
In 1965, after the death of Nathan Hervey Halsey, Claire and Gladys Halsey, who owned Parcel A, entered into a contract for the sale of the land owned by them to one Hagen. A copy of the contract was forwarded to Sargent in order that he be given the right of first refusal; however, Sargent did not exercise his option to purchase Parcel A.
In 1971, without notice to Sargent, defendant Kenneth Halsey, the owner of Parcel C, and codefendants Raymond and Dorothy Halsey, the owners of Parcel B, entered into contracts to sell their apportioned acreages to a third party, without affording to Sargent his right of first refusal to purchase Parcels B and C upon the same price as agreed upon between defendants and the third party.
All of the salient facts essential to the court’s deliberations in this matter, are not in dispute, including that it was the understanding of the parties when they entered into the option agreement in 1951, that the purpose in giving Sargent the option of first refusal to the easterly property consisting of ‘ ‘ Parcels A, B, and C, ” was to protect Sargent’s considerable investment in the land purchased by him by preventing motel use or “ dense occupation ” on the land lying easterly and probably southerly of Sargent’s property.
It has been stipulated and agreed between the parties to this lawsuit that the only issue remaining for the court’s determination is whether or not Sargent’s option of first refusal as to Parcels B and C was terminated when Sargent declined to purchase Parcel A after it was offered to him under the option agreement.
Defendant has taken the position that after the sale of Parcel A to Hagen, the remaining land lying east of Sargent’s land was *627 no longer “ adjoining ” Sargent’s land as referred to in the 1951 agreement, and that Sargent’s option of first refusal as to Parcels B and C was terminated. Defendant also appears to argue that under the 1951 agreement, the option of first refusal extended to “ Parcels A, B and 0 ” as one entire parcel for protection, and that Halsey could not be compelled to sell the parcel as an entirety if he did not wish to do so. From this, defendant reasons, that when Halsey decided to apportion the eastern parcel, upon a refusal by Sargent to exercise his option to purchase one of the apportioned parcels, the remainder of the apportioned parcels, B and C, were “ freed up ” from the 1951 agreement. Defendant concedes that there is no legal precedent which directly supports his contentions. Defendant predicates his conclusion upon a reverse analogy to New Atlantic Garden v. Atlantic Garden Realty Corp. (201 App. Div. 404) and to Sautkulis v. Conklin (1 A D 2d 962). Both of these cases stand for the proposition that where one holds an option of first refusal to purchase leased premises contained on a larger parcel of land, that the land owner cannot be compelled to sell only the leased premises, but may sell the entire parcel to the exclusion of the option pertaining to the leased premises. This court does not agree with defendants’ reasoning nor does it accept the reverse analogies relied upon by him.
It is the court’s duty sitting in equity, to attempt to get at the substance of things and to ascertain, uphold and enforce the rights and duties which spring from the real relations of the parties. It will never suffer the mere appearance and external form to cancel the true purposes, objects and consequences of a transaction.
It is implied in every contract that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. (Kirke La Shelle Co. v. Armstrong Co., 263 N. Y. 79, 87.)
The obligation to use good faith in carrying out what is written underlies all written agreements. (Brassil v. Maryland Cas. Co., 210 N. Y. 235, 242.)
Here, the fulfillment of the 1951 contract, as contemplated by the parties, was not attained by merely offering “ Parcel A ” to the plaintiff prior to its sale to a third party. Nor were plaintiff’s rights with respect to the “ remaining ” easterly property terminated or waived after he declined to purchase ‘ ‘ Parcel A ’ ’, following his investigation, which revealed that Parcel A was to be used for a single residence only.
*628 To interpret the meaning of a contract, at the time and place it was made, all the surrounding circumstances at that time necessarily throw light upon it, and this rule applies equally to an ambiguous writing as to an unambiguous one. (See Wack v. Wack, 74 N. Y. S. 2d 435, 437.)
It is the court’s finding, based upon the principles of the law of contracts, and equity, as hereinabove enunciated, that the action of Nathan Hervey Halsey, in apportioning the parcel of land lying east of plaintiff’s property into separate acreages for each of his children, was not intended to, nor did it, defeat the purpose and intention of the 1951 option agreement. The court also finds that there was no modification or alteration of the 1951 agreement. (See Crocker v. Page, 210 App. Div. 735, affd. 240 N. Y. 638; Casolo v. Nardella, 275 App. Div. 502.)
It is the decision of this court that plaintiffs are entitled to the specific performance prayed for in the complaint.