George K. Sargent et al., Respondents, *v.* Kenneth H. Halsey et al., Appellants.

Second Department, October 23, 1973.

*Edwards & Duggan* (*Leonard I. Ackerman* and *William H. Duggan, Jr.,* of counsel), for appellants.

*Matthews & Ostrander* (*Philip B. Matthews* of counsel), for respondents.

GULOTTA, J. In this action for specific performance the defendants appeal from a judgment which ordered that they perform all of the terms and conditions of a contract of sale of real property. The principal issue is whether the plaintiffs' failure to exercise a right of first refusal upon part of the optioned parcel of real property terminated such right as to the remainder of the parcel.

In 1951 plaintiff George K. Sargent entered into a contract with one Nathan Harvey Halsey to purchase certain real property located in Bridgehampton, New York. The contract of sale was executed in August, 1951 and contains the following provision: "And it is further agreed that if the party of the first part [Halsey] at any time during the lifetime of the party of the second part [Sargent] or his immediate assignee, distributees or devisees and while he or they as the case may be are still the owner of the above described property receives a bona-fide offer of purchase of his remaining land, adjoining the premises to be conveyed on the east and wishes to accept such offer, such offer must be communicated to the party of the second part or his immediate assignee, distributees or devisees as the case may be and the party of the second part or his immediate assignee, distributees or devisees, as the case may be, is or are hereby given the option to purchase such remaining land at the same price as is contained in any bona-fide offer which the party of the first part is willing to accept from any third party. The party of the second part, his immediate assignee, distributees or devisees, as the case may be, shall have fifteen (15) days from receipt of notice in which to exercise such option. This agreement shall remain in effect after delivery of the deed and shall be binding on the party of the first part and his distributees and devisees." Sargent thereafter assigned the agreement to his wife, coplaintiff Betty Sargent, and she took title to the premises described in the contract. The option agreement was duly recorded.

The remaining land referred to in the option was a single undivided 7.894-acre parcel which was owned by Halsey. In 1962 Halsey divided this parcel into three approximately equal lots (hereinafter referred to as Lots A, B and C) and deeded one lot to each of his three sons.

In 1965 Lot A, which immediately abutted the plaintiffs' property to the east, was sold to one Hagen. Prior to sale, and in keeping with the terms of the option, a copy of the contract of sale was sent to the plaintiffs in order that they might elect whether to avail themselves of their right to be the first purchasers. They chose not to exercise this right. In 1971 the defendants, owners of Lots B and C (approximately 5.6 acres), entered into contracts to sell their property to a third party without first notifying the plaintiffs and affording them the opportunity to exercise their option to purchase these two lots upon the same terms agreed to by the defendants and the third party. The plaintiffs, upon learning of the pending sale,

advised the defendants of their intention to exercise their right of first purchase. The defendants, however, responded that they no longer acknowledged the existence of the plaintiffs' right of first refusal and that they intended to sell the two lots to the third party regardless of the plaintiffs' intentions.

The instant action to compel compliance with the first refusal option was then begun. After cross motions for summary judgment had been denied the matter went to trial.

It was stipulated in open court that the option extended to the full 7.894 acres; that in 1951, when the plaintiffs purchased their property, there was an absence of zoning control in the area; that the subject premises were zoned in 1965 for 40,000 square feet per single residence and upzoned in 1972 to 60,000 square feet per single residence; that the purpose of the option was to enable the plaintiffs to protect their investment from the use of the adjoining lands for a motel or dense occupation; that Mr. Sargent, upon being notified of the pending sale by Claire and Gladys Halsey to Hagen (Parcel A), investigated the sale and ascertained to his own satisfaction that this entire parcel of 2.292 acres was being acquired by Hagen for a single residence; that he had no objection to this acquisition since the intended use would be in keeping with the character and nature of the area and therefore chose not to exercise his right of first purchase at that time; and that the sole issue for the court's decision was whether the plaintiffs had lost their right of first refusal on the entire tract when they chose not to exercise their option to purchase lot A, which abutted the plaintiff's property.

In a memorandum decision the Special Term held that the plaintiffs were entitled to specific performance and the judgment, here under review, was entered thereon.

At the outset there are a number of ambiguities or perhaps even inconsistencies to be disposed of. The phrasing of the agreement creates the option of first refusal for the lifetime of plaintiff George K. Sargent, but then purports to extend it to his immediate assignee, distributees or devisees by requiring a bona fide offer to be submitted to such extended class, overlooking the fact that the option would have terminated with the death of the grantee, unless we are willing to conclude that not only can these unspecified people enforce the option, but that their lives also measure it. In view of the stipulated purpose of the option, it is most unlikely that the purpose intended in this casual way to extend the duration of it beyond the life of the grantee to the multiple lives of a large unidentified group

of people whom he might later name in his will. However, we do not have to resolve this conflict, since the optionees themselves are the plaintiffs herein.

The option also describes the remaining land as "adjoining the premises to be conveyed on the east," whereas in point of fact it adjoined the parcel conveyed on the south as well as the east, with as much of it being situated to the south as to the east. Since it is obvious (1) that the option applied to the whole plot as it existed at the time, and the stipulation so provides, and (2) that the optionor could not diminish the optionees' rights by his ex parte actions in subdividing the parcel subsequent to the granting of the option, there is no validity to the defendants' contention that the plaintiffs have no rights because there is nothing left adjoining them on the east. Some of the property involved in this lawsuit still adjoins the Sargent parcel on the south and the southeast, assuming that is a circumstance of any consequence.

In addition to the main issue, the defendants argue that the option is too uncertain and indefinite to be effective. This issue is not in the case. In a lawsuit litigants may choose whatever path they feel will lead to the results they desire (*Cullen* v. *Naples,* 31 N Y 2d 818). Here the parties stipulated that the only question in the case was whether the option terminated because the plaintiffs had failed to exercise it in 1965 when Lot A was sold. It was further stipulated that the option covered the entire 7.894-acre tract. It likewise necessarily covered the parts of the whole, since it would be completely illusory if the optionor could avoid it by simply breaking up the parcel into smaller pieces.

We turn now to the issue at hand which is whether the plaintiffs' failure to exercise a right of first refusal on part of the optioned parcel terminated their right as to the balance of the parcel.

It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed (*Morlee Sales Corp.* v. *Manufacturers Trust Co.,* 9 N Y 2d 16; *Green* v. *Doniger,* 300 N. Y. 238). At the time the plaintiffs and their vendor (the defendants' father) entered into their sales contract the vendor owned the adjacent 7.894 acres of land. The area was unzoned and the plaintiffs, who were fearful that the adjoining land would be used for commercial purposes or would become densely occupied, insisted upon the right of first refusal, in order to maintain the integrity of their investment. Zoning has since come

to the area. The ordinance in 1965 required 40,000 square feet for a single residence and, since 1972, has required 60,000 square feet for a single residence. However, it appears in the record that the defendants have preserved their right to build on one-acre sites, so far as the zoning is concerned, by a further subdivision and exchange of deeds, so that under the single and separate ownership exception they can erect five residences instead of the three which would be permitted under present zoning.

Such overcrowding of residences is what the plaintiffs seek to protect themselves against and was the reason why they demanded that the right of first refusal be included in their sales contract. Bearing this in mind, the only reasonable interpretation is that the words " adjoining the premises " were used to describe the entire 7.894 acres, but not to require that each and every part of that land adjoin the plaintiffs' premises in order to be subject to the option, since that would obviously be impossible. To hold to the contrary would not only violate the intent of the option clause which was designed to protect the plaintiffs' investment, but would also inferentially disregard our ruling in *Costello* v. *Hoffman* (30 A D 2d 530, 532) where it was said, " ' To allow the owner of the whole to by-pass the optionee merely by attaching additional land to the part under option would render nugatory a substantial right which the optionee had bargained for and obtained ' (*Guaclides* v. *Kruse*, 67 N. J. Super. 348, 359)."

In *Costello* v. *Hoffman* (*supra*) the device sought by the optionor to nullify the option was a sale of a larger tract than that covered by the option. Here the device was first to divide the parcel into three lots and then to sell the isolating lot (Hagen's) to a buyer who intended to use it for a single residence, which the plaintiffs had no interest in preventing since it conformed to their own plans for the area. This unilateral act by the defendants is now sought to be used as in *Costello* v. *Hoffman* (*supra*, p. 532) to " ' render nugatory a substantial right which the optionee [the plaintiffs] had bargained for and obtained ' ". Such a result would clearly negate the intention of the parties as expressed in the clear language of the plaintiffs' contract and acknowledged by the defendants in the trial stipulation.

So too, the defendants' argument that the plaintiffs had waived their right of first refusal is also unimpressive. A waiver is the intentional relinquishment of a known right, with both knowledge of its existence and an intention to relinquish

it (*Werking* v. *Amity Estates,* 2 N Y 2d 43). One cannot reasonably contend that the plaintiffs relinquished their right to purchase five acres in 1971 when they failed to acquire two acres in 1965, particularly when the third-party purchaser of the two acres intended to use that tract for a single residence, in keeping with the character and nature of the area.

Accordingly, the judgment of the Special Term should be affirmed, with costs.

HOPKINS, Acting P. J., LATHAM, SHAPIRO and BENJAMIN, JJ., concur.

Judgment of the Supreme Court, Suffolk County, entered May 18, 1973, affirmed, with costs.