OPINION OF THE COURT
Stanley Harwood, J.
In this proceeding plaintiff seeks to compel the defendant to pay the costs of the college education for the youngest of the parties’ three children, to reimburse plaintiff for the sums she expended for that child’s first year of college, and to reimburse the second child of the parties, Marci Shapiro, for the sums she expended for her fourth year at college.
The parties were married on February 26, 1950, had three children, Alan, Marci and Amy, now 25, 23 and 19 years of age, and were divorced by a judgment of this court dated September 6, 1973. That judgment provided that a separation agreement executed by the parties on May 9, 1973 survived but did not merge in the judgment.
*41 The agreement contains no specific provision requiring the defendant to pay for the college education of the children. It does provide that defendant pay to plaintiff for child support the sum of $333.33 per month for each child and requires defendant to continue those payments for each child until he or she is 21 or “until such time as such child shall have concluded his or her undergraduate college education but in no event beyond the age of twenty-three (23) years”.
The plaintiff’s application for the relief sought was, by order of this court dated March 18,1981 (Pantano, J.), set down for a hearing to be conducted after the completion of discovery proceedings. By virtue of that court order, the issues to be determined upon the hearing are:
“(1) The court’s authority to award college expenses upon a showing of special circumstances.
“(2) Whether there has been an oral modification as regards providing a college education upon which the parties have relied.
“(3) The allocation between plaintiff and defendant of responsibility for the costs of a college education for the youngest* of the issue of the parties.”
The parties presented proof before this court over a period of four days. Plaintiff and defendant testified, as did the attorneys who represented them when the separation agreement was negotiated and executed and later incorporated by reference in the judgment of divorce. An attorney-accountant testified on plaintiff’s behalf and a certified public accountant testified for the defendant.
Upon the evidence, the court finds that at the time the parties were divorced, the defendant had an income of about $140,000 per year, and that his income had increased dramatically in the years since. His income in the last full year for which proof was offered at the trial (1980) was close to $600,000, and his net worth is substantially more than one million dollars. Plaintiff had no income at the time of the divorce, but later attended law school and is now earning $46,000 per year. She continues to receive *42 $18,000 annually from defendant as alimony pursuant to the divorce decree and separation agreement.
Both parties have undergraduate degrees from Cornell University and the plaintiff obtained her law degree at Hofstra University. There is apparently no dispute that the parties raised their children with the expectation that each would attend college and that throughout their upbringing, the children were given every educational and cultural advantage. All three children have outstanding academic credentials. Alan had his preparatory education at Philips-Exeter Academy, earned an undergraduate degree from Wesleyan and a graduate degree from the Wharton School of the University of Pennsylvania. Marci was graduated from Cornell University in June, 1981 and Amy is currently attending Brown University. Testimony by the two girls’ high school guidance counselor makes clear the girls were superior students and SAT and IQ scores show them to be exceptionally bright.
Alan was attending Exeter at the time of the divorce. Defendant paid for all his expenses there, for his undergraduate studies at Wesleyan and his graduate studies at Wharton. He paid for the first three years that Marci was at Cornell, including room, board and additional weekly expense money. In early 1980, plaintiff instituted litigation concerning interpretation of another provision of the separation agreement not particularly relevant here. While that litigation was pending, defendant ceased paying Marci’s college expenses, and advised Marci and Amy separately that he would not pay for their college education. He apparently continued to pay the child support payments to plaintiff in accordance with the separation agreement. The expenses for Marci’s fourth year at Cornell in the amount of $11,797.30, were paid by Marci out of a custodial account established for her by her parents pursuant to the Uniform Gift to Minors Act and funded primarily by gifts from her paternal grandparents. Amy’s first year at Brown cost $12,170.45 and has been paid for by plaintiff.
Defendant offers no clear explanation as to why he ceased paying Marci’s college expenses; with respect to Amy, he claims he has had no say in her life, and plaintiff *43 was earning enough money to take care of the expenses. It is obvious that defendant’s discontinuance of these payments is unrelated to his ability to pay; it is based, at best, on an alleged failure on the part of plaintiff and Amy to consult with him on Amy’s choice of colleges, and, at worst, on defendant’s petulance over his claim that his daughters were siding with their mother in the previously noted dispute between the parents. There is no indication that either Marci or Amy flouted defendant’s authority or refused to follow any reasonable instructions, or that Amy refused (as opposed to simply omitting) consultation with defendant about her choice of schools.
Plaintiff alleges that the parties’ background, their expectations for their children, and their children’s scholastic aptitude are “special circumstances” which warrant the relief sought. She also contends that the agreement of May 9, 1973 is silent as to college expenses, and that it was orally modified to include an obligation on the part of defendant to pay for each child’s college education. Defendant contends the agreement sets out his entire child support obligations and, relying heavily on Matter of Boden v Boden (42 NY2d 210), asserts that, absent unanticipated and unreasonable change in circumstances, this court cannot disturb the support provisions of the separation agreement. He does not argue absence of “special circumstances” warranting a college education for his daughters; instead he asserts that the Boden rule prohibits application of any “special circumstances” test because those circumstances were not unanticipated.
In support of her argument that the agreement was orally modified, plaintiff points to statements made when and before the parties signed the separation agreement. The evidence presented by both sides makes clear that when the separation agreement was negotiated, defendant’s responsibility for college expenses was discussed thoroughly by two intelligent parties represented by two competent attorneys. An early draft of the agreement, in evidence as defendant’s Exhibit “A”, specifically provided that defendant should pay all undergraduate college expenses for each child. Defendant refused to agree to that provision, stating according to plaintiff, “I don’t need your *44 goddamn lawyer or your * * * agreement to tell me what to do. I’m their father, I’ll pay for [college]”. According to defendant, he said “I don’t want to be legally obligated to pay for college under an agreement any more that I would if we were still married”. On cross-examination, defendant acknowledged that there was nothing in the agreement that obligated either parent to pay for college and that the parties understood that they would “work out college expenses for the children when the need arose”. The attorney who represented defendant during those negotiations testified that defendant intended to pay for college, but that he wanted to have discretion to pay it or not pay it as he chose. The attorney also testified that he had suggested inserting negative language regarding defendant’s obligation for college expenses, but, just as defendant rejected the affirmative language, plaintiff rejected the negative language.
Plaintiff’s argument that there was an oral modification of the agreement is unfounded. Prior agreements and negotiations are deemed to merge and be subsumed in a subsequent written agreement (Broadway Maintenance Corp. v City of New York, 19 AD2d 96). A written contract can be modified orally (assuming no violation of the Statute of Frauds or a prohibition in the contract itself) only subsequent to its making (see Block v Nelson, 71 AD2d 509, 513), and plaintiff has offered no evidence of a subsequent oral modification. But negotiations prior to the making of a contract can be used to ascertain the parties’ intent, particularly where language is unclear or ambiguous (Germaine v Safeguard Ins. Co., 7 AD2d 830; Sargent v Halsey, 75 Misc 2d 624, affd 42 AD2d 375). I^efendant’s assertion that the agreement sets out his entire obligation toward the children is equally unsupported by all the evidence, including that which he presented. The provision on which defendant relies does, as defendant asserts, contemplate, indeed encourages, that the children attend college by obligating defendant to furnish $333.33 per month toward their support through their college years. It is silpnt, however, as to who will pay for college, and it is clear from the testimony of the parties and the attorneys who represented them at the time the separation agreement was signed that the parties meant it to be that way.
*45 Defendant’s reliance on Boden (supra) in support of his contention that this court may not direct him to make the requested payments is misplaced. In Boden the agreement contained a provision for college expenses, making a specific allocation of responsibility for such expenses between the parties; the petitioning mother, whose income roughly equalled that of the father, sought further money because of the increased costs of college. Here, although these parents clearly intended that their three gifted children be provided with a college education, they intentionally declined to allocate the responsibility for the expense in the separation agreement.
Since there is no voluntary agreement on the part of either parent to pay for college expenses, we must then look to the question of whether or not there are special circumstances here which warrant a direction to the parents, in accordance with their respective means, to pay for college expenses not ordinarily included in the parental duty of support. (See Kaplan v Wallshein, 57 AD2d 828.) The factors relevant to determinations of “special circumstances” are: (1) the educational background of the parents, (2) the environment in which the children grew up, (3) the children’s academic ability and (4) the parents’ ability to provide the necessary funds. (See Frankel v Frankel, 82 AD2d 796; Gamble v Gamble, 71 AD2d 649; Kaplan v Wallshein, supra.)
There is no question that considering all four factors, “special circumstances” are present here to an abundant degree. The parents not only have degrees from excellent colleges, but the total environment in which these children were raised reflected the standards the parties set and the expectations they had for these gifted children. The children’s superior academic abilities and the father’s excellent financial condition are indisputable. Given this abundance, it is appropriate that Amy, now 19, be given a college education with the cost being borne by her parents, in accordance with their respective means. The same circumstances which compel that Amy obtain a college education warrant reimbursement to Marci for her final year at Cornell, even though she was over the age of 21 and, under ordinary circumstances, no longer entitled to look to her *46 parents for support (see “Lord” v “Lord”, 96 Misc 2d 434), and even though she had her own assets. (Cf. Gold v Gold, 96 Misc 2d 481.)
The issue in this case is not whether these children should be provided by their parents with a college education. Rather, it is which parent should pay for it. Defendant, relying on Matter of Carter v Carter (58 AD2d 438), argues in essence that he has paid his share, and it is now plaintiff’s turn. He calculates that he has paid for 7/12 of the children’s college and plaintiff should pay the remaining 5/12. Counsel for defendant is quite correct in asserting that both mother and father are equally chargeable with the support of their children. That neither parent has primary responsibility for support because of gender, however, does not mandate that each parent is to contribute in equal dollar amounts, for the rule as enunciated in Carter (p 447) and its progeny requires that this court “apportion the costs of such support between them in accordance with their respective means and responsibilities, without regard to the sex of the parent[s]” (emphasis added). Here, defendant’s income for 1980 (the last year for which he disclosed his income) was approximately 20 times greater than plaintiff’s income for that year (which income includes the alimony payments made by defendant, but does not include a full year of salaried employment for plaintiff, as she only began working in 1980). Even assuming that defendant’s income did not increase during 1981 his annual income would be 10 times greater than that of plaintiff’s for 1981, if the alimony payments are included, 13 times greater if they are not. Moreover, plaintiff has had custodial responsibilities for the children since the breakup of the marriage, and before then remained at home in the more traditional role of housewife and mother. Given these factors, it is appropriate that the father bear full financial responsibility for the college education of the parties’ children, including the reimbursement sought for sums already expended by plaintiff and Marci.
Counsel for plaintiff seeks an award of $39,000 in fees for representing her in this proceeding, in an action where court resolution of disputes between the parties is not uncommon. Counsel’s credentials are outstanding, but the *47 need to spend 195 hours to provide proper representation to plaintiff herein has not been proven. Counsel’s hourly rate of $200 is considerably more than the usual in the community where he practices. The court is of the opinion that, because of the financial circumstances of the parties and because litigation of this dispute is the result of defendant’s acts and failures to act, the entire plaintiff’s counsel fee should be borne by the defendant. (See Phyfe v Phyfe, NYLJ, Jan. 18, 1982, p 13, col 4.) The fair and reasonable value of his services is fixed at $12,500 and plaintiff is awarded that sum pursuant to subdivision (b) of section 237 of the Domestic Relations Law. This fee includes the expense incurred by plaintiff for the testimony of the expert accounting witness.
Plaintiff’s application to modify the judgment of divorce is granted as follows:
(1) Defendant is directed to provide for tuition, room and board, and $40 per week for expenses for the remaining three years of Amy Shapiro’s undergraduate education.
(2) Defendant is directed to pay to plaintiff the sum of $12,170.45 with interest from date paid by plaintiff to reimburse her for the amounts expended for Amy Shapiro’s first year at college.
(3) Defendant is directed to pay the sum of $11,797.30 with interest from the date of payment by Marci to Marci Shapiro to reimburse her for the amount expended for her fourth year at college.
(4) Defendant is directed to pay to plaintiff as and for her reasonable counsel fees the amount of $12,500.
Item No. (1) shall be paid as proper bills or statements are rendered to defendant. Items Nos. (2), (3) and (4) shall be paid within 30 days of service upon defendant of a copy of the judgment to be entered hereon.

 This was later enlarged to include the question of reimbursement of the second child for her last year’s college expense.