Nanette Dembitz, J.
In this proceeding for child support under sections 413 and 414 of the Family Court Act, a major question is the constitutionality of imposing primary liability on fathers for child support and only secondary liability on *644 mothers. The court concludes that the constitutional guarantee of equal protection of the law, as now interpreted by the United States Supreme Court, requires a uniform standard of parental liability regardless of sex. Also to be determined is the proper standard for evaluating respondent father’s obligation to his children as compared to his obligations to his creditors, in view of the fact that his payments on his debts have been absorbing a substantial share of his income of approximately $57,000 a year.
The instant controversy was precipitated by a decrease in 1975 in the income of respondent, who was and is employed by stock brokerage firms, from earnings over $100,000 annually for the previous eight or nine years. Though the parties were divorced in 1960, child support had until 1975 been paid under agreements between the parents rather than decree or court order (with no payment of alimony).
1. Equality of Parental Liability for Child Support
While the Family Court Act provides that a father must pay for his child’s support "a fair and reasonable sum according to his means”, a mother becomes liable only if the father "is dead, incapable of supporting his child, or cannot be found within the state” (§§ 413, 414; see Drazin v Drazin, 31 AD2d 531, 532; Novikoff v Novikoff, 29 AD2d 754). The act’s differential treatment of male and female parents, and the encrusted common-law standard it reflects (see Young v Valentine, 177 NY 347, 352), appears to be the residue of the long-gone legal era when the property and earnings of married women belonged to their husbands and they could not even "serve as legal guardians of their own children” (see Frontiero v Richardson, 411 US 677, 685). Progress in the economic status of women has accompanied the change in their legal status achieved since that day (see Taylor v Louisiana, 419 US 522, 535, n 17).
It is true that many women adhere to the homemaking function and that their husbands marry them with this knowledge or urge that role upon them. It is also true that the heavy hand of centuries of legal, economic, and cultural discrimination against women may still press against a mother who is employed outside the home, so that she fails to achieve the earning level of the father. (See Schlesinger v Ballard, 419 US 498; Kahn v Shevin, 416 US 351.) However, in a support proceeding the past and present circumstances of the parties, particularly in regard to the woman’s wage-earn *645 ing capacity, are weighed on an individual basis (see Kay v Kay, 37 NY2d 632, 637). Thus, sexual generalization in the law of support is the quintessence of unconstitutionality. In summarizing its holdings the United States Supreme Court has pointed out: "the challenged classifications based on sex were premised on overbroad generalizations that could not be tolerated under the Constitution.” (Schlesinger, 419 US at p 507; see, also, Weinberger v Wiesenfeld, 420 US 636; Matthews v Coffin, US Dist Ct, DC, Aug. 14, 1975, pending US Sup Ct No. 75-791, OT 1975; Stanton v Stanton, 421 US 7, 13, and cases there cited; Henderson v Henderson, 458 Pa 97.)
Since there is no rational basis for the limitations of section 414 of the Family Court Act on the liability of mothers for child support (mothers can hardly be deemed forever exempt because of their child-bearing function), those provisions must be held unconstitutional. It is to be noted that this ruling brings the act into conformity with the Domestic Relations Law, with which it is deemed in pari materia and which provides for the "education and maintenance” of a child "out of the property of either or both of its parents.” (Domestic Relations Law, § 240; see, also, Phillips v Phillips, 1 AD2d 393, 397, affd 2 NY2d 742, indicating that the woman’s wage-earning capacity, though specifically mentioned only in relation to alimony in the Domestic Relations Law, should be considered in relation to total family responsibilities; and, see Social Services Law, § 101.)
While respondent was unsuccessful in showing that petitioner is physically capable of resuming full-time employment at present, the court must reject petitioner’s argument that she will not be liable for child support when she regains such capability. Her earning potential will then be relevant on the same basis as a father’s. (As to the latter, see Meyrowitz v Meyrowitz, 34 AD2d 965, 966; Kramer v Kramer, 248 App Div 781; Matter of Sullivan v Sullivan, 55 Misc 2d 691, 694.)
2. Respondent’s Obligation for Child Support
Unlike most child support proceedings, the actual expenditures for the two children — sons aged 18 and 15 — cannot serve as the starting point for determination of the proper order. For, even during the period that respondent was paying the agreed support of $941 a month, petitioner’s father was contributing to the children’s upkeep by gifts of approximately $45,000 a year. As petitioner urges, the court is mandated to make a support determination on consideration only of the *646 circumstances of those legally responsible for child support— the parents, regardless of gifts from other sources. (See Quat v Freed, 25 NY2d 645; Matter of Boines v Lavine, 44 AD2d 765; Guerriero v Guerriero, 40 AD2d 684.)
a. Respondent’s Debts
On respondent’s available income, which is approximately $33,700 annually after his payment of taxes, the child support requested by petitioner of $1,000 a month seems reasonable but for respondent’s obligations on his debts. His monthly payments on loans (mainly from banks) averaged for the 10 months prior to the hearing herein $1,561, plus $250 a month to the Internal Revenue Service for tax arrears. While he is obligated to pay a much larger monthly amount to cover repayment of principal as well as interest on his debts, he did not demonstrate persuasively that his creditors are attempting to coerce increases in his payments. The issue is whether, as respondent argues, he should give his children only the remainder of his income after his payment of his personal expenses plus debt payments, or whether, as petitioner argues, his children are entitled to priority over his creditors.
It is settled law that a respondent’s authentic debts must be considered in fixing alimony or child support. (E.g., Harley v Harley, 49 AD2d 513; Norton v Norton, 41 AD2d 559, 560; Minskoff v Minskoff, 17 Misc 2d 718, 719; see 2 Foster and Freed, Law and the Family, pp 82, 131; Clark, Law of Domestic Relations, p 444.) Petitioner suggests, however, that this rule should apply only if a default on his debts would impede his vocational success, and that this respondent’s loans do not fall in this category. (See "Nilsson” v "Nilsson” 200 Misc 841, 844; Amato v Amato, 45 NYS2d 371, 373.)[1]
It appears true, as petitioner argues, that respondent’s employment in brokerage firms did not and does not require his assumption of debt, or maintenance of a line of credit. However, the court cannot assume that such creditors as banks and the Internal Revenue Service — as distinguished from friends or relatives — would refrain from action against respondent if he decreased the scaled-down payments they have tolerated over the past year, nor that his default would have no effect on his occupational standing. In the absence of evidence to that effect, the fact that respondent’s debts appar *647 ently were contracted to finance his personal purchases of securities does not suffice to take them out of the rule that debts must be taken into account in support proceedings. With one exception respondent obtained the loans here in isstie years before the instant child support controversy, so that no question of bad faith is presented concerning such obligations.
b. Duty to Dependents
While respondent’s debt payments thus must be considered, they cannot be given an absolute priority over child support. Rather, a balancing of obligations must be sought, like that mandated by the rule that the "reasonable requirements” of the debtor and his dependents must be satisfied before judgment creditors take. (CPLR 5205, 5226.) See, also, section 17 of the Bankruptcy Act (US Code, tit 11, § 35, subd [a], par [7]) as to inviolability of support orders in bankruptcy. The rule is the same whether the creditor seeks to obtain, or the debtor seeks to make, payments at the expense of his dependents. See McDonnell v McDonnell (281 NY 480, 482), Haas v Reiser (201 Misc 234, 238), Matter of Beahm v Beahm (47 Misc 2d 900, 902) and First Westchester Nat. Bank of New Rochelle v Lewis (42 Misc 2d 1007) as to garnishments.[2] The desirability of respondent’s avoidance of default is a factor to be considered in addition to those pertinent in the case of a judgment creditor after a default; nevertheless, here as in the above cases due weight must be given to respondent’s obligation to his dependents.
c. Standard of Required Support
Respondent’s duty is to support his children on essentially the same standard of living as he accords himself. (See Eisen v Eisen, 48 AD2d 652, 653; De Brauwere v De Brauwere, 203 NY 460, 464-465; Keller v Phillips, 39 NY 351, 354.) "The [father] did not divorce [the] child” (Laumeier v Laumeier, 237 NY 357, 364), and the conduct expected by the "right-thinking” community of a father in an intact family should be expected of a support respondent. With that model, respondent well might modify his children’s standard of living to avoid default on his obligations; however, since it seems clear that respondent anticipates an increase in his income, he would also avoid a drastic downward fluctuation in their support while his income is temporarily low.
*648 For the purpose of calculating support for the children, respondent’s personal expenses will be estimated at a lower figure than that he has claimed in these proceedings; that is, his expenditures for himself should be decreased to enable him to increase his support for his children to a comparable standard to his own. Compare Yamamoto v Costello (73 Misc 2d 592, 597), calculating the "reasonable requirements” of a judgment debtor. The monthly insurance payment the children receive because of petitioner’s disability must be taken into account, since it is received as a matter of statutory right specifically for their support needs. (See Winter v Winter, 39 AD2d 69, 71, affd 31 NY2d 983.)
On the above grounds, a monthly order for both children is entered for $650.
As to petitioner’s application for an award of a counsel fee, her counsel’s services were obviously highly competent and doubtless should be compensated by the fee she seeks. The question of whether respondent is liable for such fee is one on which the appellate courts have not spoken with complete clarity. "Counsel fees are awarded in a matrimonial action in order to insure that an indigent wife has legal representation. If she is able to pay for her own counsel, no award may be made.” (Kann v Kann, 38 AD2d 545; see Winter v Winter, 31 NY2d 983, affg 39 AD2d 69, 72, supra. )[3] To avoid manipulation of this principle it is clear that it must apply whether or not a fee has — as in Kann and Winter — been paid prior to the fee request; and it would seem that these rulings are equally applicable to an action for child support as to one for alimony. (See Eisen v Eisen, 48 AD2d 652, 653, supra; cf. People ex rel. “HH” v “HH”, 49 AD2d 130, 133 and cases there cited.) From the standpoint of punishing a respondent or inducing him to comply with his obligation without litigation,[4] there would seem to be no greater reason for fee awards in support proceedings than in many other types of civil cases, unless petitioner is under a special disability with regard to bringing suit. The fee provision seems to be another instance of the assumption of the likelihood of a woman’s economic dependence.
*649 The fact that petitioner’s funds of over $60,000 in 1975 were mainly from gifts from her father rather than earnings, seems irrelevant to the actuality that she had the funds to finance the instant suit. In the court’s discretion the application for a counsel fee is denied.

. Research has not disclosed any analysis by the New York appellate courts of the rationale for the rule of considering indebtedness in support proceedings.

. See Commonwealth v Horner (77 A2d 641, 642 [Pa]): "A husband may not be permitted to insist that his wife and children be denied proper and reasonable support while creditors receive a large portion of his income.”

. Though the Second Department suggests that the Winter affirmance does not necessarily connote approval of the reasoning of the court below (Ross v Ross, 47 AD2d 866), it undoubtedly tends to do so in view of the posture of the litigation in both courts.

. Compare Atamanuk v Wong (82 Misc 2d 1059, 1060) as to purpose of fee awards.