## Second Department, January, 1977

### (January 3, 1977)

■ Joan Bauer, Respondent, v Carl Bauer, Appellant.—In a support proceeding, the father appeals from (1) an order of the Family Court,

Westchester County, dated February 10, 1975, which, after a hearing, directed him to pay $65 per week for the support of his infant son, Scott Bauer, and (2) a further order of the same court, dated April 16, 1975, which directed him to pay petitioner's attorney an amount towards counsel fees, plus said attorney's disbursements. Order dated April 16, 1975 affirmed, without costs or disbursements. Order dated February 10, 1975 reversed, without costs or disbursements, and proceeding remanded to the Family Court for a new hearing and determination in accordance herewith. Appellant is to comply with the directions contained in the order dated February 10, 1975 pending the entry of an order based upon the new determination to be made by the Family Court. The parties were married in Pennsylvania in 1952, but have been separated since 1972. They are not divorced. When they separated, the infant, Scott, lived with his father; since June, 1973 the child has resided with petitioner and his older brother. Originally, the petition sought support for petitioner and the parties' two children. The Family Court, however, after being apprised of an outstanding order of support by the Court of Common Pleas of Pennsylvania, which provided for the support of petitioner and the parties' older son, dismissed so much of the petition as sought support for them. The proceeding continued, limited solely to the question of support for the younger son, Scott. In a temporary order of support, the Family Court directed appellant to pay $150 per month for the said child's support. After reviewing the infant's needs and the father's resources, the Family Court awarded $65 per week for the child's support. The Family Court, however, denied appellant's request, made at the beginning of the hearing, to direct petitioner to produce all data relating to her financial resources and to direct her to appear for a deposition. We hold that it was error for the Family Court to have denied appellant any inquiry or deposition respecting petitioner's resources. Section 413 of the Family Court Act charges the father with the primary obligation for support of his child. Section 414 of the Family Court Act provides that "The court may apportion the costs of the support of the child between the parents according to their respective means and responsibilities." The power to apportion does not affect the priority of the obligation but, under circumstances where both parents are capable of support, inquiry may be had as to the financial circumstances of both parties. In view of the within disposition, we do not reach either the issue of the constitutionality of sections 413 and 414 of the Family Court Act as applied to appellant or the issue of his status to question their constitutionality. Apart from the "strong presumption of validity" which "attaches to legislative enactments" (Nettleton Co. v Diamond, 27 NY2d 182, 193), "Questions involving the constitutionality of a law" will not be considered by an appellate court "unless they are essential to the determination of the appeal" (11 Carmody-Wait 2d, NY Prac, § 71:114, citing Curtin v Barton, 139 NY 505 and Matter of Attorney-General [Olyphant], 155 NY 441). Martuscello, Acting P. J., Cohalan, Rabin and Hawkins, JJ., concur; Latham, J., concurs in the result, with the following memorandum: I concur in the result reached by the majority. Nevertheless, I believe that the issue of the constitutionality of sections 413 and 414 of the Family Court Act is squarely presented, to the limited extent that those sections place the *primary obligation* of support upon the father of a child, and to that limited extent I would hold them unconstitutional as violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Sections 413 and 414 of the Family Court Act provide that, in a support proceeding, the primary duty of support rests upon the father, regardless of the mother's financial resources (see Drazin v

*Drazin,* 31 AD2d 531; *Santasiero v Briggs,* 278 App Div 15). A mother becomes liable for the support of her child only when the father is "dead, incapable of supporting his child, or cannot be found within the state" (Family Ct Act, § 414). *Only then may the court look to the mother for support (Siegel v Hodges,* 15 AD2d 571). I believe it is no longer constitutionally permissible to impose the sole burden of child support on a father (who perhaps earns $10,000 per year, but is capable of giving support), and exempt the mother (who perhaps earns $20,000 per year). In recent years the Supreme Court of the United States has ruled that a classification based solely upon sex is inherently suspect as violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution *(Frontiero v Richardson,* 411 US 677). Nevertheless, in applying that clause, the Supreme Court has recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. It does, however, require that the classification have a reasonable relation to the objective of the statute *(Reed v Reed,* 404 US 71). In *Frontiero v Richardson (supra)* the court held violative of the due process clause a statute which provided that spouses of male members of the armed forces are dependents for purposes of certain benefits, but that spouses of female members of the armed forces are not dependents unless they are in fact dependent on their spouses for more than one half of their support. The court held that a statutory scheme which draws a sharp line between the sexes, solely for the purpose of achieving administrative convenience, necessarily commands dissimilar treatment for men and women who are similarly situated and thus involves the very kind of arbitrary legislative choice forbidden by the Constitution. In *Reed v Reed (supra)* a provision of the Idaho probate laws mandated that men be given preference over women when persons of the same entitlement apply for appointment as administrator of an estate. The Supreme Court held that the statute was based solely upon discrimination by sex and that it violated the Constitution. The court stated (pp 75-76): "In applying that clause [the equal protection clause], this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways * * * The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *Royster Guano Co. v. Virginia,* 253 U. S. 412, 415". Thus, in order to escape the condemnation of the equal protection clause, the statutory classification must be reasonable, not arbitrary, and must rest upon some ground of difference which has fair and substantial relation to the object of the legislation, so that all persons similarly situated shall be treated alike. It would seem to be clear that the object of the legislation challenged herein is not the interests of the parents, but the best interests of the child, and that being so there is no substantial relation between that objective and the classification made. Indeed, the interest of the State is to see that the child is provided for and kept off the welfare rolls. It is entirely possible, indeed probable, that the view here espoused would not greatly change the result achieved in future support proceedings. Where, as here, the father attempts to prove that the mother has her own substantial earnings, he should not be precluded from demonstrating this to the court even though his resources may be adequate.

In determining the level of support for the child, the court should consider the assets, resources and expenses of both parents. In this way, a proper determination can be made as to the extent, if any, to which each parent should share in the responsibility for support. Often the mother cannot work outside of the home. Many times her earning potential is not as great after a long period as a homemaker. Frequently, the mother must remain home and care for the children, precluding her from earning her own income. But the court, upon the presentation of proper proof by the parties, can consider all relevant factors in determining the proper level and source of support. The differential treatment of male and female parents by the statutes herein, "and the encrusted common-law standard it reflects (see *Young v Valentine,* 177 NY 347, 352), appears to be the residue of the long-gone legal era when the property and earnings of married women belonged to their husbands and they could not even 'serve as legal guardians of their own children'" (see *Carole K. v Arnold K.,* 85 Misc 2d 643, 644). This thinking is now a relic of the past. Worthy of note is the opinion of Judge Dembitz in *Carole K. v Arnold K. (supra),* which held that there is no rational basis for the limitations of sections 413 and 414 of the Family Court Act on the liability of mothers for child support. She stated (pp 644–645): "It is true that many women adhere to the home-making function and that their husbands marry them with this knowledge or urge that role upon them. It is also true that the heavy hand of centuries of legal, economic, and cultural discrimination against women may still press against a mother who is employed outside the home, so that she fails to achieve the earning level of the father. (See *Schlesinger v Ballard,* 419 US 498; *Kahn v Shevin,* 416 US 351.) However, in a support proceeding the past and present circumstances of the parties, particularly in regard to the woman's wage-earning capacity, are weighed on an individual basis (see *Kay v Kay,* 37 NY2d 632, 637). Thus, sexual generalization in the law of support is the quintessence of unconstitutionality. In summarizing its holdings the United States Supreme Court has pointed out: 'the challenged classifications based on sex were premised on overbroad generalizations that could not be tolerated under the Constitution.' *(Schlesinger,* 419 US [498], 507; see, also, *Weinberger v Weisenfeld,* 420 US 636; *Matthews v Coppin,* US Dist Ct DC, Aug. 14, 1975, pending US Sup Ct No. 75-791, OT 1975; *Stanton v Stanton,* 421 US 7, 13, and cases there cited; *Henderson v Henderson,* 458 Pa 97.)" Finally, I do not suggest we, in any manner, abrogate the duty of support by a father. I would hold only that the responsibility for the support of the child should be borne unconditionally by both parents, in proportion to their respective abilities to provide, and in the light of all relevant circumstances.