In the Matter of ALLAN S. CARTER, Appellant, v CAROLYN R. CARTER, Respondent.

Second Department, July 25, 1977

*Reeder & Abel (Steven L. Abel* of counsel), for appellant.

*Brent, Phillips, Dranoff & Davis, P.-C. (Sanford S. Dranoff* of counsel), for respondent.

*Louis J. Lefkowitz, Attorney-General (Daniel M. Cohen* and *Samuel A. Hirshowitz* of counsel), appearing pursuant to section 71 of the Executive Law and CPLR 1012 (subd [b]).

SHAPIRO, J. Petitioner Allan Carter, the divorced husband of respondent Carolyn Carter, has custody of their infant son, Kenneth Carter. He applied to the Family Court of Rockland County for an order directing his former wife to contribute to the child's support. His petition was dismissed. We reverse and remand for further proceedings consistent with this opinion.

### THE ISSUE

Are sections 413 and 414 of the Family Court Act unconstitutional insofar as they appear to place the primary duty of child support on the father and make the mother's duty of support of the child secondary by making that obligation

conditional on the incapability of the father to support the child?

## THE FAMILY COURT ACT PROVISIONS

Sections 413 and 414 of the Family Court Act, in their entirety, read as follows:

"§ 413. Father's duty to support child.

"The father of a child under the age of twenty-one years is chargeable with the support of his child and, if possessed of sufficient means or able to earn such means, may be required to pay for such child's support a fair and reasonable sum according to his means, as the court may determine."

"§ 414. Mother's duty to support child; apportionment.

"If the father of a child is dead, incapable of supporting his child, or cannot be found within the state, the mother of such child is chargeable with its support where such child has not attained the age of twenty-one years and, if possessed of sufficient means or able to earn such means, may be required to pay for its support a fair and reasonable sum according to her means, as the court may determine. The court may apportion the costs of the support of the child between the parents according to their respective means and responsibilities."

## PRIOR PROCEEDINGS

The parties were married on October 30, 1965. One child, Kenneth, was born of the marriage on October 17, 1970. On August 3, 1973 the parties executed a separation agreement under which the petitioner husband took custody of Kenneth, with the respondent being given visitation rights. Thereafter, on October 10, 1973, the parties were divorced. Petitioner thereafter remarried.

In November, 1975 and into February, 1976, the respondent, by a proceeding she brought in the Family Court, sought expansion and implementation of her rights of visitation with her son. While that proceeding was under way the petitioner, by petition dated February 18, 1976, instituted the instant support proceeding in the same court. On October 22, 1976 there was a further, apparently final, hearing on the wife's visitation proceeding involving a further amendment of the visitation order. Thereafter, the court and the parties turned

to the father's support petition and the following colloquy occurred:

"The Court: Fine. Now the F-51-76, the petition filed by Mr. Carter. The Court was advised in chambers that counsel was ready to enter into a stipulation in substance as follows; that Section 413 and 414 of the Family Court Act apply to this proceeding.

"That Mr. Carter is not deceased and is fully capable of supporting the child and possessed of sufficient means to do so.

"That the statute, Section 414 does not require any apportionment under these circumstances.

"That the only issue before this Court is the constitutionality of Section *[sic]* 413 and 414 of the Family Court Act.

"Would that be correct?

"Mr. Dranoff: So stipulated.

"Mr. Abel: So stipulated."

The respondent then moved as follows: "Mr. Dranoff: * * * If Your Honor please, at this time Your Honor, I move based upon the stipulation based upon the financial situation of the former husband, I respectfully move to dismiss the petition on the grounds that it fails to set forth a Prima Facie case within Section *[sic]* 413 and 414 of the Family Court Act on the face of this petition and specifically based upon the statements made, it is clear that under these Sections, Mr. Carter is not entitled to any contribution from Mrs. Carter."

The petitioner's attorney opposed the motion to dismiss: "solely on the fact that the two Section *[sic]* are unconstitutional as is further set forth in the brief which has been submitted."

Upon the foregoing record the Family Court ruled:

"At this time, the Court finds that no notice was given to the Attorney General as required under the Executive Law, since the question of constitutionality was raised. The Court finds at this time that Section *[sic]* 413 and 414 are constitutional and dismisses the petition.

"Further, the Court grants the Petitioner leave to renew the motion in order to give notice to the Attorney General if he wishes to renew the motion. The motion should be made in writing. This has been an oral motion, although there have been memorandum *[sic]* of law on notice to the attorney for the Respondent and on notice to the Attorney General's Office to give him an opportunity to reply if he so wishes.

"Mr. Abel: I am not sure when you are talking about the motion, which motion?

"The Court: I am sorry.

"Mr. Abel: We already had the motion to notify the AG which was going to withdraw, as I recall, we are going to withdraw that motion to obviate the need for notification to the AG.

"The Court: We'll do it on that basis.

"At this time you wish to withdraw the request to notify the Attorney General?

"Mr. Abel: Yes I do Your Honor.

"The Court: Based upon that statement, at this time the Court finds that there is no requirement of notification to the Attorney-General.[1]

---

1. Under section 71 of the Executive Law whenever the constitutionality of a statute is brought into question at a trial or hearing of any action or proceeding in any court of record, the court before which the action or proceeding is pending may make an order directing the party desiring to raise the question to serve notice thereof on the Attorney-General and permitting that State officer to appear at the trial or hearing in support of the constitutionality of the statute. The court may also make such order upon the application of any party to the trial or hearing or upon a motion by the Attorney-General. When such an order has been made it becomes the duty of the Attorney-General to appear in support of the constitutionality of the statute.

Although the statute speaks in nonmandatory terms with respect to the duty of the court to make such an order, it is clear that the court in which an issue of the constitutionality of a statute is raised has no power to dispense with notification to the Attorney-General, since the purpose of the statute is to have all of the people of the State represented when the constitutionality of their laws is put in issue.

Hence, although the record on appeal shows that there was no brief from the Attorney-General on the issue of the constitutionality of sections 413 and 414 of the Family Court Act because the hearing court, mistakenly in our opinion, permitted the parties to dispense with notice to that official of the raising of the issue of the constitutionality of those sections, this court, by order dated May 3, 1977, directed the attorney for the petitioner to notify the Attorney-General of the pendency of this appeal. After some further discussion, the Attorney-General did submit his brief, arguing that the statutes involved were constitutional because the petitioner had failed to overcome the presumption of constitutionality and that the issue of whether the duty of support imposed on the father was in fact primary was not before the court because in the present case the sole question before the Family Court was whether there should be an allocation of the cost of support of the child between both parents. This is in accordance with the general policy of that court which was, where only intrafamily distribution of obligations was involved, to allocate support obligations under the last sentence of section 414 on a contributory basis, apportioning support costs according to the respective means and responsibilities of each parent. The Attorney-General also argued, with some validity in our view, that the parties should not be permitted, as they had been allowed to do here by the trial court, to seek by stipulation to render the statutory factor of the wife's means irrelevant, thus

"You wish that the Attorney General be notified in this proceeding Mr. Abel?

"Mr. Abel: At this time I have no particular request Your Honor. In other words, I am not moving to notify the AG.

"I might ask if Mr. Dranoff has any interest in notifying the AG?

"Mr. Dranoff: If Your Honor please, according to the CPLR, the obligation is based upon the party who claims the unconstitutionality of a statute. Since Mr. Abel has withdrawn his motion to notify the Attorney General, the Court on its own volition and its own motion should not have the obligation to notify the AG. That is his obligation.

"Mr. Abel: I agree.

"Mr. Dranoff: We respectfully ask the Court to stay by its decision, that the statute is constitutional as the case may be.

"The Court: At this time, the Court finds that Sections 413 and 414 of the Family Court Act are constitutional.

"The Court therefore, based upon that question of law and the stipulation as set forth on the record, that that is the only issue before the Court, dismisses the petition.

"Mr. Dranoff: Thank you very much, Your Honor.

"Mr. Abel: May I ask one thing. Will that stand as the decision of the Court, the verbal decision just now?

"The Court: The Court will issue an order which would be appealable which will be the decision of the Court. Subsequently, the Court may also issue a written decision.

"Mr. Abel: That's what I am inquiring about, you think that you may?

"The Court: It is possible."

The court thereafter issued its order declaring: "The petition dated February 18, 1976 be and the same hereby is dismissed."

We are faced here with still another in the series of questions which have been raised in the wake of the decision in *Reed v Reed* (404 US 71). In that case the court struck down, as a violation of the equal protection clause of the Fourteenth Amendment, a provision of the Idaho Probate Code which gave mandatory preference to men over women for appoint-

presenting the court with a constitutional issue which might well prove unnecessary of determination.

ment as administrator of a decedent's estate. The attack here is on the language of section 413 of the Family Court Act, quoted above, which has been read by this court as charging "the father with the primary obligation for support" of his child *(Bauer v Bauer,* 55 AD2d 895, 896). Judge DEMBITZ of the Family Court, considering section 413 together with section 414, read the latter section as providing that "a mother becomes liable [to pay for her child's support a fair and reasonable sum according to her means] only if the father 'is dead, incapable of supporting his child, or cannot be found within the state' " *(Carole K v Arnold K,* 85 Misc 2d 643-644). She, therefore, concluded that those provisions were unconstitutional. Our examination of the total language of both sections, coupled with our obligation to sustain their constitutionality even if that requires the excision of the opening phrases of section 414, which could be and have been read to declare that the mother of a child under the age of 21 years is not chargeable with its support unless one or another of the above-quoted conditions is met, leads us to a contrary conclusion. Insofar as the cases dealing with this question (see *Matter of Garcy,* 19 AD2d 811; *Matter of Lewis v Lewis,* 2 Misc 2d 849, affd 5 AD2d 674 mot for rearg den 5 AD2d 777, app dsmd 4 NY2d 872, mot for lv to app den 6 AD2d 690; *Carole K v Arnold K, supra)* have held to the contrary, we believe they are in error.[2]

---

2. *Matter of Garcy* (19 AD2d 811) dealt with whether the death of the father discharges him of the primary obligation to support his child, it then becoming the mother's obligation to support the child. The court concluded that a trust which the father left was not chargeable with the costs of supporting the child unless it be demonstrated that the infant would otherwise be destitute of other sufficient means of support and education. In *Matter of Lewis v Lewis* (2 Misc 2d 849, affd 5 AD2d 674, mot for rearg den 5 AD2d 777, app dsmd 4 NY2d 872, mot for lv to app den 6 AD2d 690) the issue was whether the divorced mother, who had custody of the children, both of whom were under 10 years of age, could obtain from the Children's Court in this State an increase over the monthly support payment for the children of $150 to which the father had agreed in a separation agreement which had been made a part of an Alabama judgment of divorce. While the Supreme Court, Nassau County, held that the Children's Court had that power, it reversed the order doubling the father's support payments on the ground that a grant of approximately one half of the net income of their father for their support was unreasonable and arbitrary. The court (L. BARRON HILL, J.) did say that subdivision 1 of section 31 of the Children's Court Act "declared a husband chargeable with the support of his children; the mother is not chargeable with support in the absence of proof that the father is dead or incapable of supporting his children or cannot be found within the State" (2 Misc 2d 849, 851, *supra).* But there was no issue in the case of apportionment, or any effort to impose on the mother any contribution toward the support of her children. Hence, neither of these cases supports the proposition that the primary responsibility for support of an

In excising the language in question, or reading it as not creating prior conditions for triggering a mother's responsibility to contribute to the support of her infant child in accordance with her means, and in giving greater weight to the latter part of section 414 of the Family Court Act, we follow familiar rules of statutory interpretation. Thus subdivision c of section 150 of McKinney's Statutes (McKinney's Cons Laws of NY, Book 1, Statutes) declares: "Where the constitutionality of an act may be rendered doubtful, the court will first ascertain whether a construction of the act is fairly possible by which the question may be avoided. Since every presumption is in favor of the validity of a statute, every effort will be made to give its ambiguous language such a meaning that the act may stand without conflict with the fundamental law. If possible, a statute is required to be construed in favor of its constitutionality, and in such manner as to uphold its constitutionality."

In *Hirson v United Stores Corp.* (263 App Div 646, 650), the court declared: "Under familiar rules where the constitutionality of an act may be rendered doubtful, the court will first ascertain whether a construction of the act is fairly possible by which the question may be avoided. *(Crowell v. Benson,* 285 U. S. 22, 62; *Panama R. R. Co. v. Johnson,* 264 id. 375, 390.)" In *Schieffelin v Goldsmith* (253 NY 243, 251) Judge HUBBS, speaking for six members of the Court of Appeals, said: "If we assume that the sentence in question is unconstitutional, it does not follow that the whole statute is void. It is a complete harmonious statute with that sentence deleted * * * The provisions of the act are not so interdependent that the act cannot operate without the sentence in question. It is not so related to the other provisions that it can be supposed that the Legislature would not have passed the act without it. *(People ex rel. Alpha P.C. Co. v. Knapp,* 230 N. Y. 48, 60.)"

In *Bauer v Bauer* (55 AD2d 895, *supra),* we cited, in support of the existence of a "strong presumption of validity" which "attaches to legislative enactments", the decision of the Court of Appeals in *Nettleton Co. v Diamond* (27 NY2d 182). In that

infant child is on the father and that only if he is incapable of contributing to the support of his child, may the mother be ordered to contribute to the child's support. In *Carole K v Arnold K* (85 Misc 2d 643) Judge DEMBITZ, after holding that the opening provisions of section 414 of the Family Court Act are unconstitutional, then went on to reject the petitioning mother's argument that she would not be liable for child support when she regained her capability to resume full-time employment.

case the court said (p 193): "A strong presumption of validity attaches to legislative enactments and a party who is attacking the constitutionality of a statute bears the heavy burden of establishing unconstitutionality beyond a reasonable doubt *(Fenster v. Leary,* 20 N Y 2d 309; *Matter of Van Berkel v. Power,* 16 N Y 2d 37; *Matter of Roosevelt Raceway v. Monaghan,* 9 N Y 2d 293)." Applying that presumption to the language of the two sections, we conclude that their primary purpose is to carry out the responsibility of the State as *parens patriae* to safeguard the welfare of the child. It should be noted that section 413, standing by itself, simply declares that the father is chargeable with the support of his child and that he *may* be required to pay for the child's support if he has, or is able to earn, the means to make such payment toward that end as the court may determine is "a fair and reasonable sum according to his means".

The courts, including ours, which determined that the duty of support is "the primary obligation" of the father *(Bauer v Bauer, supra,* p 896) apparently reached that conclusion because they read the opening language of section 414, which is entitled "Mother's duty to support child; apportionment", as meaning that the mother becomes liable for contribution to the support of the child only if the father " 'is dead, incapable of supporting his child, or cannot be found within the state' " *(Carole K v Arnold K,* 85 Misc 2d 643, 644, *supra,* citing Family Ct Act, §§ 413, 414; *Drazin v Drazin,* 31 AD2d 531, 532; *Matter of Novikoff v Novikoff,* 29 AD2d 754). We find nothing in the language of the condition which requires us to read it as such an exclusive condition. Rather, the balance of the section, which then establishes the same standards of means for the mother as does section 413 for the father, declares, in language identical to that used in section 413, that the court may require her to pay for the child's support a fair and reasonable sum as it may determine. Section 414 then goes on to declare: "The court may apportion the costs of the support of the child between the parents according to their respective means and responsibilities."

Assuming, however, that the language of section 414 is susceptible to an interpretation that the mother's obligation is a secondary one, we may, in order to sustain its constitutionality, apply the canons of construction we have discussed above. Applying them, we find that the opening language of section 414 is not to be read as establishing conditions precedent to a

mother's becoming subject to contribution in accordance with her means toward the support of her child (McKinney's Cons Laws of NY, Book 1, Statutes, § 150, subds b, c).

Therefore, we read the two sections as meaning that both the father and the mother are equally responsible for the support of their children and that it is within the power of the Family Court, and it is its duty, to apportion the costs of such support between them in accordance with their respective means and responsibilities, without regard to the sex of the parent. It follows that the Family Court was in error when it read the two sections as barring it from apportioning part of the cost of support of the child to the mother unless the petitioner husband could establish that he was incapable of supporting his child, a condition which he conceded he could not meet when he stipulated before the court that he "is fully capable of supporting the child and possessed of sufficient means to do so."[3]

Our construction of sections 413 and 414 of the Family Court Acts as permitting that court to apportion the costs of support of a child between its parents according to their respective means and responsibilities, even when it appears that the father is fully capable of supporting the child out of his own means, reconciles them with section 240 of the Domestic Relations Law, which deals with the custody and maintenance of children and provides that in any action to annul a marriage or for a separation or a divorce the court must give direction for the custody, care, education and maintenance of any child of the parties and that: "Such direction may make provision for the education and maintenance of such child out of the property of either *or both of its parents.*" (Emphasis supplied.)

Since under our reading of the statute there is no unequal treatment of the parents on the basis of their sex, there is no need for us to resolve the question raised by petitioner in his brief as to the possible effect on the statute of the decisions of the Supreme Court of the United States with respect to the impact of the equal protection clause of the Fourteenth Amendment on statutory classifications based on sex (see *Reed v Reed,* 404 US 71, *supra; Frontiero v Richardson,* 411 US 677; *Schlesinger v Ballard,* 419 US 498; *Weinberger v Weisenfeld,*

---

3. An examination of the transcript (the appeal is here on original papers) shows that at the time of the hearing both parties were gainfully employed in the public school system.

420 US 636; *Stanton v Stanton,* 421 US 7, 13). If, in fact, sections 413 and 414 had to be read as resulting in the imposition on either spouse, because of sex, of an unfair portion of the burden of support of the child we would be compelled to strike them down as violative of the equal protection of the laws guaranteed by the Fourteenth Amendment, for we could not nor would we "wish to cut back in any way on the case law which has developed a more equitable and less discriminatory approach to economic responsibility between men and women who divorce" *(Kay v Kay,* 37 NY2d 632, 637).

We believe that our construction of the two statutes is not only in accord with the primary legislative intent, but also accords with the requirements of the Fourteenth Amendment.

The order appealed from should therefore be reversed and the proceeding remanded to the Family Court for a determination by it of the needs of the child of the parties and for the proper apportionment thereof between the parties, consistent with their respective means.

HAWKINS and SUOZZI, JJ., concur with SHAPIRO, J.; LATHAM, J. P., concurs under the constraint of the holding in *Bauer v Bauer* (55 AD2d 895).

Order of the Family Court, Rockland County, dated October 22, 1976, reversed, on the law, without costs or disbursements, and proceeding remanded to the Family Court for determination by it of the needs of the child of the parties and for the proper apportionment thereof between the parties in accordance with their respective means.