In re Elizabeth FRANCIS, Debtor.

ABRAHAM & STRAUS, Division of Federal Department Stores, Inc., Plaintiff,

v.

Joseph FRANCIS, a/k/a Joseph E. Francis, Kenneth Kirschenbaum, Trustee, Defendants.

Bankruptcy No. 880–06574–18.

Adv. No. 881–0682–18.

United States Bankruptcy Court, E. D. New York.

Dec. 23, 1981.

Stephen P. Gelfand, Smithtown, N. Y., for debtor.

Batzar & Weinberg, P.C., Rockville Centre, N. Y., for Abraham & Straus.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

Plaintiff, a retail department store, extended credit to defendant's wife, a debtor under Chapter 13 of the Bankruptcy Code.

Plaintiff seeks judgment vacating the automatic stay imposed by 11 U.S.C. § 1301 and permitting plaintiff to proceed against defendant as co-debtor on the unsatisfied obligation incurred by the Chapter 13 debtor. The complaint alleges that defendant actually received the consideration for plaintiff's claim, that plaintiff will not be paid under debtor's plan, and that failure to vacate the stay will cause irreparable harm to its interest.

The facts are set forth briefly below.

On October 27, 1980, debtor, defendant's wife, from whom defendant has been separated for fourteen years, filed a petition in bankruptcy under Chapter 13 of the Bankruptcy Code.

In her petition, debtor listed plaintiff as one of her creditors.

Debtor's plan, filed pursuant to 11 U.S.C. § 1321 and confirmed on January 13, 1981, in compliance with 11 U.S.C. § 1325, provided for the payment of 100% of the debts listed in her petition.

No proof of claim was filed by or on behalf of plaintiff within the time mandated by Bankruptcy Rule 302.

On September 2, 1981, plaintiff commenced an adversary proceeding to vacate the § 1301 stay and to collect the amount due for various consumer goods sold and delivered to defendant's wife between November 20, 1978, and June 1, 1980.

The issue before the Court is whether under any theory propounded by this plaintiff the Court may grant plaintiff relief from the automatic stay provisions of 11 U.S.C. § 1301.

## INTRODUCTION

The matter before the Court involves a recurring issue regarding the liability of a co-debtor for consumer purchases made by a spouse that has filed a petition in bankruptcy under Chapter 13. Because much of the law, both in bankruptcy and in domestic relations, is new in this area, the Court will examine at length the various theories presented for assessing the rights of a creditor and the liabilities of a co-debtor spouse.

Section 1301 of the Bankruptcy Code is new to bankruptcy law.[1] It is designed to protect a debtor proceeding under Chapter 13 by insulating him from indirect pressure exerted by creditors or friends and relatives that may have co-signed an obligation of the debtor. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977) 426, U.S.Code Cong. & Admin.News 1978, p. 5787. The Court in resolving a dispute between a creditor and co-debtor, as in this case, is mindful of the legislative intent to protect the debtor in the rehabilitative process. The protection that § 1301 affords the co-debtor is incidental to the protection it provides to the debtor.

Subsection (a) of § 1301 stays an action by a creditor after an individual has filed under Chapter 13. The creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt[2] of the debtor from any individual that is liable on such debt with the debtor, or that has secured the debt, unless the individual became liable or secured the debt in the ordinary course of his business, or the case is closed, dismissed or converted to Chapter 7 or Chapter 11. *See* 5 Collier on Bankruptcy, ¶ 1301.01 at 1301–2, 3, and 4 (15th ed. 1980).

Plaintiff does not allege that defendant became liable or secured his wife's debt in the ordinary course of business, nor has the case been closed, dismissed, or converted. Consequently, plaintiff is not excepted from the stay under subsection (a) of § 1301.

Subsection (b) relates to a negotiable instrument and is inapplicable in the instant case.

Subsection (c) requires the Court to grant relief from the stay in certain circumstances. Section 1301 states the following:

(c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by section with respect to a creditor, to the extent that—

(1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;

(2) the plan filed by the debtor proposes not to pay such claim; or

(3) such creditor's interest would be irreparably harmed by such stay.

---

1. 1301. Stay of action against codebtor.

 (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—

 (1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or

 (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

 (b) A creditor may present a negotiable instrument, and may give notice of dishonor of such an instrument.

 (c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this

2. The automatic stay under § 1301 pertains only to the collection of a consumer debt defined by 11 U.S.C. § 101(7) to mean a debt incurred by an individual primarily for a personal, family or household purpose. Therefore, not all debts owed by a Chapter 13 debtor will be subject to the stay, however, defendant does not contest the fact that in the instant case all purchases were for consumer goods.

subsection (a) of this section with respect to a creditor, to the extent that—

(1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;

(2) the plan filed by the debtor proposes not to pay such claim; or

(3) such creditor's interest would be irreparably harmed by such stay.

Plaintiff's position under § 1301(c)(1) is that defendant has received consideration for its claim. This rests on two presumptions implied by the marital relationship of the debtor and the defendant. The claim may be sustained, plaintiff urges, upon a finding of agency or a finding that plaintiff supplied the debtor with necessaries, thereby relieving defendant of his obligation to supply them to his dependents.

AGENCY

 The Court will first look at the question of agency.

In *Falk v. Krumm*, 39 Misc.2d 448, 240 N.Y.S.2d 653, *aff'd* 22 A.D.2d 911, 255 N.Y. S.2d 569 (Sup.Ct. Nassau County, 1963), the court held that no agency is implied as between husband and wife from the mere fact of marriage. Plaintiff has introduced

no evidence to prove any agency express or implied by which it could hold defendant liable for the purchases made by the debtor. In *R. H. Macy, Inc. v. Herskowitz*, 56 Misc.2d 390, 290 N.Y.S.2d 390, 393 (Civ.Ct. New York County, 1968), an action by a retailer against a husband and wife for goods sold and delivered, the court stated, "An agency by implication might have arisen if the parties had been living together, the wife, with the husband's knowledge and implied or express consent, had been making purchases for her family from plaintiff on a charge account, and the husband had always paid the bill." None of the enumerated factors is present in the instant case. Accordingly, the Court holds that no implication of agency arises either from the marital relationship or from the conduct of the parties.

SUPPORT OBLIGATIONS

The Court next addresses the question of whether defendant can be held liable on the theory that the purchases were necessaries for his wife and children which defendant was obliged to supply.[3] In proceeding on this theory, plaintiff assumes that a husband is primarily responsible for such support and maintenance. This assumption is incorrect.[4]

---

3. The support statutes of New York State relevant to the case before the court are found in Domestic Relations Law §§ 32, 236, 237, 240 and Family Court Act §§ 413, 414.

Section 32 of DRL states:

§ 32. Persons legally liable for support of dependents. For the purpose of this article, the following persons in one state are declared to be liable for the support of dependents residing or found in the same state or in another state having substantially similar or reciprocal laws, and, if possessed of sufficient means or able to earn such means, may be required to pay for such support a fair and reasonable sum, as may be determined by the court having jurisdiction of the respondent in a proceeding instituted under this article:

1. Husband liable for support of his wife;
2. Wife liable for support of her husband;
3. Parents liable for support of their child or children under twenty-one years of age.

As amended L.1980, c. 281, § 3.

Additional provisions in DRL here pertinent are found under Article 13, Provisions Applicable to More Than One Type of Matrimonial Action; § 236, Alimony, temporary and permanent;

§ 237, Counsel fees and expenses; and § 240, Custody and maintenance of children.

Section 412 of the Family Court Act states:

§ 412. Married person's duty to support spouse

A married person is chargeable with the support of his or her spouse and, if possessed of sufficient means or able to earn such means, may be required to pay for his or her support a fair and reasonable sum, as the court may determine, having due regard to the circumstances of the respective parties.

Section 413 of the Family Court Act states:

§ 413. Parents' duty to support child

The parents of a child under the age of twenty-one years are chargeable with the support of such child and, if possessed of sufficient means or able to earn such means, may be required to pay for such child's support a fair and reasonable sum according to their respective means, as the court may determine and apportion.

4. The creditor reasons that in common law a husband had the duty to support his wife and children. To the extent that a third party discharged the husband's obligation, the husband

## SUPPORT OF CHILDREN

Until 1977, and despite the provisions of Domestic Relations Law § 240 and Family Court Act 413, a father was held to have the primary obligation for the support of his children. The mother assumed secondary liability under Family Court Act § 414. See In re Garcy's Trust, 19 A.D.2d 811, 243 N.Y.S.2d 464 (1963).

In Carter v. Carter, 58 A.D.2d 438, 397 N.Y.S.2d 88 (1977), the Second Department, finding Family Court Act §§ 413, 414 unconstitutional, held that both the mother and father were equally responsible for the support of their children.[5]

In Lord v. Lord, 96 Misc.2d 434, 409 N.Y. S.2d 46 (New York County, 1978) the court faced the issue of whether the primary responsibility for support rested with the father. In finding that it did not, the court stated:

> The traditional and statutory notion (DRL § 32) that a father has the primary obligation to support his children neither reflects the realities of modern life nor complies with our constitutional require-

ments of equal protection. Nor is such a construction consistent with the statutory dictates of DRL § 240 which requires that support be determined "having regard [for] the circumstances . . . of the respective parties" and "out of the property of either or both of its parents." (Emphasis added.)

## SUPPORT OF SPOUSE

In addition to defining the liability of parents to children, DRL § 32 defines the liability of one spouse to another. The statute charges spouses with the support of each other. However, prior to its amendment in 1980, wives were liable for the support of their husbands only in the event the husband was incapable of supporting himself or likely to become a public charge, DRL § 32, subsection 4. The purchases which are the basis of the disputed claim in this case were made both prior to and following the enactment of the amended statute. Nonetheless, that portion of DRL § 32 which qualified the obligation of a spouse, viz, "if possessed of sufficient means or able

---

received consideration and the third party could look to the husband for reimbursement. Prior to 1977 there was both statutory and common law support for this position, however in Carter v. Carter, 58 A.D.2d 438, 397 N.Y.S.2d 88 (1977) the Second Department, finding the support provisions as set forth in Family Court Act §§ 413 and 414 unconstitutional, held that both the mother and father were equally responsible for the support of their children and it was within the power of the Family Court ". . . and it is its duty, to apportion the costs of such support between them in accordance with their respective means and responsibilities without regard to the sex of the parent." Accord Kapuscinski v. Kapuscinski, 75 A.D.2d 576, 426 N.Y.S.2d 582 (1980). Concomitantly, Family Court was authorized in considering an application for support to assess the financial means and abilities of both the father and the mother. See Post v. Moore, 99 Misc.2d 812, 417 N.Y.S.2d 426 (Sececa County, 1979). On March 5, 1979, a Supreme Court decision (Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306) overruled an alimony statute similar to New York's (DRL §§ 236, 237), as unconstitutional based on its denial of equal protection of the law. Orr held that a gender-based classification which generates additional benefits only for those it has no reason to prefer, i.e., women, cannot survive the equal protection scrutiny. The court stated, ". . . no longer

is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and world of ideas." During an alimony hearing, it was reasoned, the court could determine which women were discriminated against, vis-a-vis their husbands, as well as which family units defied the stereotype and left the husband dependent on the wife.

Initially, rather than strike the New York alimony statutes, the courts construed DRL §§ 236 and 237 as providing for awards to "spouses". See Corigliano v. Corigliano, 74 A.D.2d 630, 425 N.Y.S.2d 159 (1980).

In 1980, the New York State legislature amended the alimony and support statutes, as found in the Domestic Relations Act and the Family Court Act, to be gender neutral.

(For an extensive discussion of the nature, characteristics and historical development of alimony see Waldshmidt v. Houghland, 5 Bankr.Ct.Dec. 651, M.D.Tenn.1979.) In footnote 2 of Waldshmidt the court noted that in the aftermath of Orr v. Orr "alimony cannot continue to be justified on the basis of its origin in the common law support duty of the husband."

5. In Carter v. Carter, the court ultimately directed the mother to pay child support to the custodial father.

to earn such means, [the husband or the wife] may be required to pay for such support a fair and reasonable sum, as may be determined by the court," remained unchanged. Reasoning from this language,[6] the court in *Wiesenfeld v. State of New York*, 474 F.Supp. 1141 (S.D.N.Y.1979) held "the right to support is inchoate until the aid of the court is sought. 'The mere relationship of husband and wife does not give rise to a debtor-creditor status.'"

■ There is no evidence before the Court that there has been any court determination of the support obligations of either the husband or the wife in this dispute.

Absent a court determination that defendant must provide maintenance and support for his wife and children, plaintiff's position cannot be sustained.[8] Plaintiff's allegation that defendant received the consideration for plaintiff's claim is inconsistent with the law and the facts.

Having determined that plaintiff is not entitled to relief under subsection (a) of 11 U.S.C. 1301, the Court next considers plaintiff's alternative basis for relief, *i.e.*, the plan filed by the debtor proposes not to pay its claim (11 U.S.C. § 1301(c)(2)). However, the evidence is uncontroverted that debtor's plan did propose to pay plaintiff. The fact that plaintiff will not in fact be paid under the plan is irrelevant under this subsection.

Had plaintiff filed a proof of claim pursuant to 11 U.S.C. § 501(a), its rights would be protected. Although subsection (a) of § 501 is permissive only, a proof of claim is a prerequisite to allowance of a claim.[9] The comments of the House Judiciary Committee make it clear that the law does not require a creditor to file in instances such as no-asset-liquidation cases or where the creditor would not recover in any event. H.R. Rep. No. 595, 95th Cong. 1st Sess. 351 (1977). But where there are assets and the debtor proposes to pay the creditor, filing is the act by which the creditor's claim is incorporated into the records of the court. It is indispensable to the claimant's right to share in the debtor's assets. *See* 3 Collier on Bankruptcy, ¶ 501.01 at 501–6 (15th ed. 1980).

Bankruptcy Rule 13–302(e) provides the time limitation for filing. Subsection (2) of Bankruptcy Rule 13–302(e)[10] provides that

---

6. *Wisenfeld* interpreted the language in §§ 412 and 413 of the Family Court Act, however, DRL § 32 contains essentially the same language. Family Court Act § 412 states "... if possessed of sufficient means or able to earn such means, may be required to pay for his or her support a fair and reasonable sum, as the court may determine, having due regard to the circumstances of the respective parties."

Domestic Relations Law § 32 states "... if possessed of sufficient means or able to earn such means, may be required to pay for such support a fair and reasonable sum, as may be determined by the court having jurisdiction of the respondent in a proceeding instituted under this article."

7. *Eccles v. Hutchinson*, 28 Misc.2d 412, 414, 213 N.Y.S.2d 122, 124 (Suffolk County 1961).

8. Even should a court determination have been made, respondent might nonetheless escape liability by a showing of due and punctual compliance with the support agreement. *See B. Altman & Co. v. Durland*, 185 App.Div. 114, 173 N.Y.S. 62.

9. Chapter 9 and Chapter 11 of the Bankruptcy Code contain provisions to the effect that a proof of claim, properly filed, is not a prerequi-site to allowance of unsecured claims where the creditor is listed by the debtor. *See* 11 U.S.C. §§ 924, 925, 1106, 1111. Chapter 13 carries no similar provisions in respect of the filing of claims.

10. Bankruptcy Rule 13–302(e)(2) states:
(e) Time for Filing.

⸱ ⸱ ⸱ ⸱ ⸱

(2) Unsecured Claims. Unsecured claims, whether or not listed in the Chapter XIII Statement, must be filed within 6 months after the first date set for the first meeting of creditors in the Chapter XIII case, except as follows:
(A) On application before the expiration of such period and for cause shown, the court may grant a reasonable, fixed extension of time for the filing of a claim by the United States, a state, or a subdivision thereof.
(B) In the interest of justice the court may grant an infant or incompetent person without a guardian up to an additional 6 months for filing a claim.
(C) A claim which arises in favor of a person or becomes allowable because of a judgment for the recovery of money or property from such person or because of a judgment denying or avoiding a person's interest in property may be filed within 30 days after such

an unsecured claim must be filed within six months after the first meeting of creditors, with certain exceptions not applicable in the instant case. The section acts as an absolute bar to late filed claims. *See In re Foster*, 11 B.R. 476 (S.D.Cal.1981) (disallowing claims not filed within six months despite lack of notice within the six month period); *In the Matter of Colvin*, 5 B.R. 468 (D.Me.1980) (holding that 13–302(e) did not abridge or modify any substantive rights of creditors despite failure to allow late-filed claims against "surplus.")

Despite plaintiff's failure to file a proof of claim, plaintiff argues that the co-debtor [11] or the debtor was at fault for failure to act. Although Bankruptcy Rule 13–303 [12] provides that if a creditor fails to file a claim, the debtor or the trustee may execute and file a proof of claim, this section was enacted to protect the debtor from finding herself burdened with liabilities which remain unpaid because of the failure of the creditor to file claims which may later be established as nondischargeable. *See* 15 Collier on Bankruptcy, ¶ 13.303.04 at 13–303–4 (14th ed. 1978).

■ In the instant case, plaintiff does not allege that its claim is nondischargeable and therefore the debtor has no need to protect its interest by filing for the creditor. The debtor is protected by listing the plaintiff as a creditor. The creditor cannot look to the debtor for recourse. Having failed to file a proof of claim, plaintiff's claim is disallowed under 11 U.S.C. § 502 (which requires a filing) in spite of the fact that debtor's plan proposed to pay this claim. The fact that plaintiff may not actually be paid under the plan does not entitle the plaintiff to relief under 11 U.S.C. 1301(c)(2).

■ Lastly, plaintiff alleges that in the absence of relief from the stay, plaintiff's interest will be irreparably harmed and therefore the court must grant relief under 11 U.S.C. § 1301(c)(3). The legislative history is instructive in understanding the kind of irreparable harm that subsection (c) was intended to prevent. The creditor would be so harmed where the creditor filed bankruptcy himself, or threatened to leave the locale or lost his job. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 426. The Court recognizes that these examples are illustrative and not definitive, nevertheless defendant does not fall within any of the enumerated categories. Plaintiff offers no proof that any contingencies within the contemplation of this section exist to impair whatever rights it may have against defendant.

Plaintiff cannot be heard to plead irreparable harm based on any failure to collect under the debtor's plan. Plaintiff finds itself in that position either by choice or neglect. The Court finds that plaintiff has failed to demonstrate that it will suffer irreparable harm if the § 1301 stay remains in effect.

CONCLUSION

For reasons stated above, plaintiff's complaint seeking relief from the stay imposed by 11 U.S.C. 1301 is dismissed.

judgment becomes final, but if the judgment imposes a liability which is not satisfied, or a duty which is not performed, within such period or such further time as the court may permit, the claim shall not be allowed.

11. Under Bankruptcy Rule 13–304, if the creditor fails to file his claim before the conclusion of the first meeting of creditors, a codebtor may file proof of an unsecured claim. Defendant failed to file such a proof of claim. The court does not here consider what future rights petitioner may have against the codebtor. As previously stated, the statute under which petitioner demands relief (§ 1301), was enacted primarily to protect the debtor, not the codebtor.

12. Bankruptcy Rule 13–303 states:

Filing Claims By Debtor or Trustee
If a creditor fails to file his claim before the conclusion of the first meeting of creditors in the Chapter XIII case, the debtor or the trustee may execute and file a proof of such claim as an unsecured claim on Official Form No. 13–10 in the name of the creditor. Such claim shall be treated as a filed claim only for purposes of allowance and distribution. The court shall forthwith mail notice of such filing to the creditor and to the debtor if the claim is filed by the trustee, or to the trustee if the claim is filed by the debtor. The creditor may nonetheless file a proof of claim pursuant to Rule 13–302, which proof when filed shall supersede the proof filed by the debtor or trustee.