In re William Ralph CASE, Jr. & Kimberly Gay Case, Debtors.

Bankruptcy No. 92–20201–C–13.

United States Bankruptcy Court, W.D. Missouri, C.D.

Dec. 15, 1992.

James D. Mariea, Fulton, MO, for Callaway Bank.

Gwendolyn Froeschner, Columbia, MO, for debtors.

Rick Fink, Chapter 13 Trustee.

MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

The case presents the legal question whether the Chapter 13 codebtor stay, embodied in 11 U.S.C. § 1301, operates to prevent a creditor . from filing a claim against the probate estate of a deceased codebtor. This Court holds that it does. Nonetheless, the Court will grant the creditor's motion for lift of stay on the basis that continued imposition of the stay results in irreparable harm to the creditor.

FACTS

On January 2, 1991, Debtor Ralph Case executed a promissory note in favor of the Callaway Bank in the amount of $2,293.41, payable in one year at 14% interest. The

note was cosigned by his aunt Ruth Trammell but was not otherwise secured. Ms. Trammell died on November 28, 1991, and on December 12, 1991, Callaway Bank filed a claim in the probate estate. Debtor Ralph Case has been in default on the promissory note since January 2, 1992. Debtors filed their Chapter 13 bankruptcy petition on March 2, 1992. The amount owing on the note to Callaway Bank is approximately $1,500.00. Debtors' approved plan originally allowed for a dividend of 5% to all unsecured creditors. The plan has been amended, upon motion of Trustee, to provide a 26.5% dividend to unsecured creditors, including Callaway Bank. Currently pending is Debtor's motion to amend the plan again to pay 100% on the Callaway Bank claim and 5% to the remaining unsecured creditors.

## DISCUSSION

■ Chapter 13 includes a provision for a codebtor stay which stays the efforts of a creditor to collect a debt from an individual who has cosigned or guaranteed debts for the debtor. Section 1301(a) provides:

(a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—

(1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or

(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C. § 1301(a) (1988).

Initially, the Court notes that § 1301 stays actions against "individuals." Throughout the Bankruptcy Code, the term "individual" is used to refer to natural persons as opposed to corporations, partnerships or other similar entities. *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 185 (2d Cir.1990); *Georgia Scale Co. v. Toledo Scale Corp. (In re Georgia Scale Co.)*, 134 B.R. 69, 70 (Bankr.S.D.Ga.1991) (Congress used the word "individual" to distinguish natural persons from corporations and partnerships.)

The Bank contends that § 1301 does not apply to stay an action against a decedent's estate because same is not a natural person. But a decedent's estate differs greatly from a corporation or partnership or other business entity. Those entities exist separately and apart from other entities and natural persons. For example, a partnership may take on liabilities and may own assets which are quite different from the assets and liabilities of the individuals which make up the partnership. The decedent's estate is simply the extension of an individual natural person and exists only for the purpose of distributing that individual's assets, paying the individual's debts, and generally winding up the individual's affairs after death. *Mathey v. Mathey*, 109 Mont. 467, 98 P.2d 373, 375 (1939). Therefore, for all intents and purposes, a decedent's estate is merely carrying out the decedent's wishes (sometimes implied by the state) and the Court rules that § 1301 does apply to Ms. Trammell's probate estate.

The Bank further suggests that the policy justifications which undergird the codebtor stay are inapplicable after the codebtor is deceased. The Court thinks otherwise. The codebtor stay is "designed to protect a debtor operating under a chapter 13 individual repayment plan case by insulating him from indirect pressures from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 426 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6381. When a codebtor dies, the burden of the codebtor's obligation is transferred, in essence, to that individual's legatees and heirs because any obligations paid by the decedent's estate reduces assets that may be distributed to them. In a case, such as this one, where the cosigner is a relative of the debtor, the legatees and heirs are also likely to be relatives of the debtor. Those

individuals are just as likely, and have the same motivation, to put pressure on the debtor as the original codebtor had. Thus, the same policy considerations are present in relation to a creditor's actions to collect a debt from a codebtor decedent's estate as a creditor's acts to collect from a living co-debtor.

■ Of course, § 1301, like § 362, also provides creditors a route through which they can request and receive relief from the stay in appropriate circumstances. Section 1301(c) provides:

> (c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—
>
> (1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;
>
> (2) the plan filed by the debtor proposes not to pay such claim; or
>
> (3) such creditor's interest would be irreparably harmed by continuation of such stay.

11 U.S.C. § 1301(c) (1988).

The bank trains the focus of its argument on § 1301(c)(3). It argues that it will suffer irreparable harm if it is not allowed to proceed against Ms. Trammell's estate now because the estate is nearly ready for distribution. The Court agrees and will grant Callaway Bank's motion to lift stay.

■ First of all, the bank will not be prevented from pursuing collection of that portion of the debt not provided for under Debtors' Chapter 13 plan. Section 1301(c)(2) provides that the Court shall lift the stay to the extent that the bank's debt is not provided for under Debtors' plan. 11 U.S.C. § 1301(c)(2) (1988). Thus, "to the extent the plan fails to provide for payment in full of a debt, a creditor is entitled to

seek relief from the court to pursue the co-debtor for the remainder." *In re Pardue,* 143 B.R. 434, 437 (Bankr.E.D.Tex.1992). But as to the portion which Debtors propose to pay under their plan, the creditor's position is precarious.[1]

Absent a lift of stay, the bank's claim against the probate estate is only contingent. Even though the Probate Code provides a mechanism for the protection of claims that remain contingent at the time that the probate estate is distributed, Mo. Rev.Stat. § 473.390 (1986), if the stay remains in place, the bank may have to sue nearly a dozen separate beneficiaries to fully recover on Ms. Trammell's guarantee.

Section 473.390 provides that, where a claim against a probate estate is contingent at the time the estate is ready for distribution, the parties may agree on the value of the contingent claim and reduce it to an absolute claim against the probate estate; the court may order the administrator to retain, for two years, an amount sufficient to pay the contingent claim if it should become absolute, but after that two year period, the withheld amount must be distributed out. The statute also allows the probate court to order distribution of the full estate, passing the contingent liability along to the distributees. *Id.* Therefore, even though the Probate Code offers some protection for the holder of a contingent claim, at best, that protection is good for only two years, while Debtor's Chapter 13 plan *must* run for at least three years. There are nearly a dozen beneficiaries under Ms. Trammell's will, so if Debtors default under their plan and the case is dismissed or converted after two years,[2] the bank would be put to the task of suing each individual beneficiary to recover a small portion of the remaining debt from each one. Therefore, to allow Ms. Trammell's probate estate to be distributed without lifting the codebtor stay would subject

---

**1.** At present that portion is 26.5%, but Debtors' amendment to their plan proposes to raise that amount to 100%.

**2.** For the bank, it is a best case scenario that the probate court would order an amount sufficient to cover the bank's claim to be withheld from

distribution for two years. But the court has the option to make immediate distribution of the full probate estate, Mo.Rev.Stat. § 473.390 (1986), and in that case, the bank's jeopardy would be more immediate.

904

the bank to an unreasonable risk of dissipation of assets which may be used to pay its debt and to unreasonable collection expenses if it is forced to sue multiple beneficiaries to ultimately collect this debt. *See* S.Rep. No. 989, 95th Cong., 2nd Sess. 139 (1978).

## CONCLUSION

█ In accordance with the above discussion, the Court believes that a co-debtor's estate occupies the protected position of a co-debtor in Chapter 13. However, if state statutes do not protect the interest of a creditor until the plan is completed, the creditor should be granted relief from the stay to pursue its claim for two reasons. First, to protect the creditor from potential loss and second to reduce unnecessary litigation in a number of courts. Accordingly, Callaway Bank's Motion For Lift of Stay is GRANTED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.