In re Andrew Thomas HUMPHREY
and Michelle Diane Humphrey,
Debtors.

No. 03–21232.

United States Bankruptcy Court,
W.D. Missouri.

June 14, 2004.

Noel Bisges, Jefferson City, MO, for Debtors.

Louis J. Leonatti, Leonatti & Baker, Mexico, MO, for creditor.

## MEMORANDUM OPINION

DENNIS R. DOW, Bankruptcy Judge.

The matter before the Court in this Chapter 13 proceeding is the motion of Show Me Credit Union ("Show Me") for relief from the codebtor stay imposed by 11 U.S.C. § 1301 relating to its efforts to collect from a cosigner on a consumer note executed by Debtor Michelle Diane Humphrey. Debtors and the cosigner, Jane D. Pilger, oppose the motion. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(G). For the reasons set forth below, the Court denies Show Me's motion.

## I. BACKGROUND

Debtors filed this Chapter 13 proceeding on May 23, 2003. On that same date, Debtors filed a Chapter 13 plan in which they proposed to pay to the trustee the sum of $185 per month for a period of 40 months to be distributed to their secured, priority and general unsecured creditors. That plan, which was confirmed on August 13, 2003, also provided that a claim held by Show Me, secured by a lien on a 1997 Ford Taurus, be paid to value (which the Debtors estimated to be $4,000) on a prorata basis from the payments made by the Debtors to the Chapter 13 Trustee at the prevailing local rule Chapter 13 rate of interest. Show Me, however, filed an untimely proof of claim on that note which was disallowed by the Court upon objection by the Debtors. The subject of Show Me's present motion is a note executed by Debtor Michelle Humphrey on November 12, 2002, in the original principal amount of $2000 which was cosigned by Jane Pilger.

The Court issued an order on May 27, 2003, establishing September 15, 2003 as the bar date by which creditors must file claims. That date was later amended to October 16, 2003. No claim was filed by Show Me on the cosigned note. Subsequent to the expiration of the bar date, the Chapter 13 Trustee sent a notice dated October 20, 2003, regarding the status of claims, specifying those claims which would be paid (and the proposed treatment of those claims) and those claims which were not proposed to be paid, as a result of not having been filed. The notice specified that unless a response was filed within 30 days from the date of issuance of the notice, the claims would be allowed or disallowed as proposed. The unsecured claim of Show Me, which is the subject of this motion, was identified as not having been filed and therefore to be disallowed for that reason. No response to the motion was filed on Show Me's behalf.

As a result of not having filed a claim on this cosigned note, Show Me is receiving no payments under the plan. It now seeks relief from the codebtor stay imposed by 11 U.S.C. § 1301(a) in order to initiate collection activities on this debt against Jane Pilger, the cosigner.

## II. DISCUSSION AND ANALYSIS

A. Scope and Purpose of Codebtor Stay

Upon the filing of a Chapter 13 case, a stay goes into effect that protects

not only the debtor but also a person who is liable with the debtor on a consumer debt of the debtor. 11 U.S.C. § 1301(a). The codebtor stay embodied in § 1301(a) prevents a creditor from acting to collect any part of a consumer debt of the debtor from any individual liable on that debt with the debtor or that secured the debt, unless that individual became liable or secured the debt in the ordinary course of that person's business. The stay continues until the case is closed, dismissed or converted to Chapter 7 or Chapter 11. This stay is "designed to protect a debtor proceeding under Chapter 13 by insulating him from indirect pressure exerted by creditors or friends and relatives that may have cosigned an obligation of the debtor." *Abraham and Straus v. Francis (In re Francis)*, 15 B.R. 998, 1000 (Bankr. E.D.N.Y.1981) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. (1997) 426, *U.S.Code Cong. & Admin. News* (1978), p. 5787). A creditor prevented from acting against a codebtor under this section may, however, obtain relief for any of the following reasons: (1) the codebtor received the consideration for the claim; (2) the plan does not propose to pay the claim; or (3) the creditor would be irreparably harmed by continuation of the stay. 11 U.S.C. § 1301(c). No suggestion has been made by Show Me that the obligation in question is not a "consumer debt" encompassed by the codebtor stay. Neither is there any allegation that the cosigner became liable on this debt as a commercial surety in the ordinary course of the cosigner's business. What Show Me does contend is that it should be granted relief from the codebtor stay under § 1301(c)(2) because the plan does not propose to pay the claim and under § 1301(c)(3) because it would allegedly be irreparably harmed if the stay is continued in effect. As these are independent grounds for relief from stay, the Court will examine each of them separately.

**B. Whether the Plan Proposes to Pay the Claim—§ 1301(c)(2)**

■ Show Me claims it is entitled to relief from the codebtor stay on the grounds the plan does not propose to pay its claim. In support of that contention, Show Me observes that the plan makes no specific mention of this unsecured claim and reminds the Court that it is not receiving payments under the Chapter 13 plan. Unless the Debtors propose some special classification or treatment, it would be unusual for a Chapter 13 plan to make specific mention of a general unsecured claim. That does not mean, however, that the plan "proposes not to pay" such a claim. General unsecured creditors are in fact receiving payment under Debtors' plan. In this case, the plan proposed to pay $185 per month for 40 months to be distributed to all of the Debtors' creditors, whether secured, priority or general unsecured. That stream of payments would have resulted in some payment to unsecured creditors, but would not, assuming all scheduled claims were filed, have resulted in 100% satisfaction of the Debtors' general unsecured claims.

Some understanding of the practice in this district with regard to the form of and confirmation process for proposed Chapter 13 plans is necessary in order to determine to what extent the Debtors' plan proposes to pay or not to pay unsecured claims. In this district, the approved form Chapter 13 plan provides debtors with four options with regard to the payment of general unsecured claims. Debtors may indicate that they are proposing to pay a 0% dividend on unsecured claims. In such a case, it would be clear that the plan proposes not to pay such claims. Another choice is a Chapter 13 plan in which the debtors

specify that they intend to provide a 100% dividend to unsecured creditors. In that case, obviously the plan proposes to pay such claims. Another option is a "pot plan" in which the debtors propose to pay a certain sum of money (as opposed to a dividend) to their unsecured creditors predicated upon the amount of their non-exempt equity. The final option, and the one chosen by the Debtors in this case, is a "base" plan in which the Debtors propose to pay a certain amount of money per month to the trustee for a certain period of time with that money to be distributed among the Debtors' creditors with the priority and secured creditors being paid first. Whether unsecured creditors will receive a distribution and, if so, how much, will depend in part upon the amount of the filed and allowed unsecured claims.

It is true, as Show Me suggests, that the courts have held that if the plan proposes to make less than full payment on unsecured claims held by creditors with co-signed debt, such creditors are entitled to relief from the codebtor stay to collect the amount that will not be paid under the plan. *In re Case,* 148 B.R. 901, 903 (Bankr.W.D.Mo.1992); *In re Fink,* 115 B.R. 113, 115 (Bankr.S.D.Ohio 1990); *First National Bank of Dickson v. Garrett (In re Garrett),* 36 B.R. 432, 433 (Bankr. M.D.Tenn.1984); H.R.Rep. No. 595, 95th Cong., 1st Sess. 122–123 (1977), *U.S.Code Cong. & Admin. News* (1978), pp. 6083–6084 ("If the debtor proposes not to pay a portion of the debt under his Chapter 13 individual repayment plan, then the stay is lifted to that extent.") Given the nature of the plan, however, and the practice and procedure in this district regarding confirmation of plans and allowance of claims, determining whether, and to what extent, the plan "proposes not to pay such claim" is not a simple matter.

Several alternative approaches are available to the Court under the circumstances. The Court could hold that the plan proposes not to pay unsecured claims to the extent that the payment stream proposed by the base plan would not pay the secured and priority claims as scheduled and also make a 100% dividend payment on scheduled unsecured claims. Debtors could fairly be said to contemplate that if all claims are filed and allowed as scheduled and the proposed stream of payments under the plan does not pay unsecured creditors in full, then, to some extent, it proposes not to pay such claims. This approach, however, has two drawbacks. First, it does not comport with reality, in that scheduled creditors sometimes do not (as in this case) file claims, some claims are filed and allowed in amounts other than the amounts reflected on the schedules, and some creditors not scheduled learn of the case and file claims which are subsequently allowed. Second, it would make the process of determining the extent to which a creditor with a cosigned claim should be granted relief from the codebtor stay an administrative nightmare. The Chapter 13 Trustee would have to make a determination in each such case of the hypothetical distribution unsecured creditors would receive if all the scheduled claims were filed and allowed in the amounts scheduled.

The other approach is to consider that what the plan "proposes" is to pay whatever dividend unsecured creditors receive based on the proposed stream of payments and the nature and amount of claims filed and allowed. Under this approach, the plan only "proposes not to pay such claims" to the extent that unsecured claims are actually not being paid based upon the proposed plan payments and the claims actually allowed, in the amounts allowed, by the notice of allowance and disallowance

filed by the Chapter 13 Trustee after the expiration of the bar date.

In most cases, this issue arises in relation to a creditor who has filed a claim and is receiving partial satisfaction of the claim through the Chapter 13 plan, but seeks permission to recover the balance outside the plan from the codebtor. In this case, the Chapter 13 Trustee advises that unsecured creditors are receiving a 100% dividend. That results primarily from the failure of several creditors, including Show Me, to file claims. If all scheduled unsecured and secured creditors had filed claims, the dividend to unsecured creditors would have been approximately 23%. If all claims were allowed as filed, but Show Me had filed its unsecured claim, the dividend to unsecured creditors would have been approximately 80%. These figures illustrate another reason for adopting the approach the Court does with regard to determining the propriety of granting relief from the codebtor stay. Specifically, using the hypothetical approach, which assumes all claims, including Show Me's were filed, the dividend to unsecured creditors paid under the plan is lower and the resulting percentage of unsecured claims not paid increases, thus creating an argument for relief from the codebtor stay. The Court sees no reason to give Show Me the benefit of the result it would have obtained if it had filed a claim, when it has neglected to do so. The fact that Show Me is not being paid does not mean the plan proposes not to pay such claim and does not, therefore, entitle it to relief under § 1301(c)(2), particularly, when that is a result of its own failure to file such a claim. *See Francis*, 15 B.R. at 1003 ("The fact that plaintiff may not actually be paid under the plan does not entitle the plaintiff to relief under 11 U.S.C. § 1301(c)(2).")

C. Irreparable Harm—§ 1301(c)(3)

Subsection (c)(3) of § 1301 authorizes relief from the codebtor stay if the creditor would be irreparably harmed by continuation of the stay. Show Me argues that it will be irreparably harmed if the stay remains in effect, because it is not receiving payments under the plan and will have to wait until conclusion of the plan, which it estimates to be December, 2006, to recover its claim from the codebtor.

Unfortunately for Show Me, the courts have uniformly held that mere delay in the receipt of payments does not constitute irreparable harm so as to warrant relief from the codebtor stay. *Harris v. Fort Oglethorpe State Bank*, 721 F.2d 1052, 1054 (6th Cir.1983); *Collier on Bankruptcy*, ¶ 1301.03[2][c], p. 1301–10 (15th rev. ed.2002); K. Lundin, *Chapter 13 Bankruptcy*, § 90.1, p. 90–1 (3d. ed. 2000 & Supp.2002). This Court agrees. The legislative history makes clear that a creditor must demonstrate that some event has occurred or is about to occur which will impair its ability to recover from the codebtor and which requires immediate action. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 122 (1977). This standard might be met if the guarantor were about to depart the jurisdiction, was transferring assets to shield them from creditors or was in deteriorating financial condition and threatening to file bankruptcy. None of these situations is alleged here.

Show Me is not currently receiving payments under the plan as a result of its own failure to file a proof of claim. The Court does not believe Show Me demonstrates irreparable harm merely by reason of not receiving payments under the plan, especially when that is a result of its own inaction. *Francis*, 15 B.R. at 1004 ("Plaintiff cannot be heard to plead irreparable harm based on any failure to collect under the debtor's plan. Plaintiff finds itself in that position either by choice or neglect.")

## III. CONCLUSION

The Court finds that Show Me has not demonstrated an entitlement to relief from the codebtor stay under § 1301(c)(2). The fact that Show Me is not receiving payments under the plan is a result of its own failure to file a proof of claim and not because the plan proposes not to pay such claim. The plan proposed by the Debtors is in fact paying a 100% dividend to general unsecured creditors. Therefore, it does not "propose not to pay" Show Me's unsecured claim. The Court also finds that Show Me has not demonstrated irreparable harm so as to warrant granting relief from the codebtor stay under § 1301(c)(3). Once again, Show Me's failure to receive payments under the plan is the result of its own failure to file a proof of claim. Show Me alleges only that it will suffer delay in the collection of its claim from the codebtor. The legislative history indicates and the Courts have uniformly held that mere delay does not constitute irreparable harm warranting relief from the codebtor stay.